No. 12076

IN THE SUPREME COURT OF THE STATE OF MONTANA

1971

———————————

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

ROSEMARY BENNETT, NANCY WILLIAMS
and VERNON BROOKS,

Defendants and Respondents.

———————————

Appeal from: District Court of the Eighth Judicial District,
Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
David Gliko, Assistant Attorney General, appeared,
Helena, Montana.
J. Fred Bourdeau, County Attorney, Great Falls, Montana.
Neil Ugrin, Deputy County Attorney, argued, Great Falls,
Montana.

For Respondents:

Robert Tucker argued, Great Falls, Montana.
Gregory Warner argued, Great Falls, Montana.

———————————

Submitted: December 1, 1971

Decided: FEB 7 - 1972

Filed: FEB 7 - 1972

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is taken by the state of Montana from an order suppressing evidence by the district court in the eighth judicial district, county of Cascade. The evidence suppressed by the court was seized at the time of the arrest of the three defendants Rosemary Bennett, Nancy Williams, and Vernon Brooks on January 29, 1971, in Great Falls, for the crime of possession of dangerous drugs.

The arrest of defendants and seizure of the evidence was made in Apartment 4-W at 913 Second Avenue North, in Great Falls, by Detectives James Cook and Robert Dull. At the time of the arrest, the detectives did not have a search warrant nor did they have a warrant to arrest. The arrest was accomplished by entry through an open door into the apartment, which was rented by two of the defendants, Rosemary Bennett and Nancy Williams.

Prior to the evening of the arrest, Detectives Cook and Dull and Detective Ray Smith had collectively exchanged information obtained from a reliable informant concerning previous drug activity in Apartment 4-W. Additionally, the owner of the apartment house, a Mrs. Kinnison residing in California, had telephoned Detective Smith giving information that drugs possibly were being used in that particular apartment. Independently, other information from a previously used and reliable informant was obtained by Detective Dull that "Butch Brooks" was a dealer in drugs and that "he had a load of acid." Detective Cook testified he had received information from a previously used and reliable informant that Brooks was generally involved with drugs.

Detective Cook also testified that another informer told him Brooks had brought a supply of LSD to Great Falls, but Cook was unable to testify as to the reliability of that informant.

Based on the landlady's complaint and information received, Detectives Cook and Dull on the evening of the arrest proceeded to conduct an investigation of Apartment 4-W. As Detective Cook went inside the main lobby, a common entrance of the apartment house, and into the manager's office, he observed defendant Brooks enter the building and walk toward Apartment 4-W. Cook called Detective Dull on a portable radio; Dull entered the building and together they proceeded toward Apartment 4-W. At this time, they were in the common lobby to the apartment building and not in any individual apartment.

Upon reaching Apartment 4-W, the detectives found the door to the apartment open and an order emanating therefrom, which they testified was "burning marijuana". The detectives entered the apartment, walked up a short stairway or flight of stairs, and observed the three defendants sitting around a table on which there was a marijuana roach (burned marijuana stub or butt), and a clear plastic bag containing what they believed to be marijuana. The defendants were immediately placed under arrest and the marijuana roach was seized, along with the bag of marijuana.

The controlling issue to be decided here is whether the officers had probable cause, under the circumstances, to make an arrest without a warrant, in a constitutionally protected area.

The lawfulness of defendants' arrests must be measured

by the standards prescribed in section 95-608, R.C.M. 1947,

the pertinent part of which provides:

> "Arrest by a peace officer. A peace officer
> may arrest a person when:
>
> " * * *
>
> "(d) He believes on reasonable grounds, that
> the person is committing an offense, or that
> the person has committed an offense and the
> existing circumstances require his immediate
> arrest."

Section 95-606 R.C.M. 1947, provides:

> "Arrest without a warrant. A peace officer
> or person making an arrest without a warrant
> must inform the person to be arrested of his
> authority, if any, of the intention to arrest
> him and the cause of the arrest, except when
> the person to be arrested is actually engaged
> in the commission of or in an attempt to commit
> an offense, or is pursued immediately after
> its commission, or after an escape, or when
> the giving of such information will imperil
> the arrest."

Section 95-608(d), R.C.M. 1947, together with section

95-606, R.C.M. 1947, empowers a police officer to arrest without

a warrant, where sufficient probable cause to arrest is found.

Probable cause has been defined as "reasonable ground for belief

of guilt" and has been distinguished as being more than bare

suspicion. Brinegar v. United States, 338 U.S. 160, 69 S.Ct.

1302, 93 L ed 1879, 1890, rehearing denied 338 U.S. 839, 70

S.Ct. 31, 94 L ed 513; Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223,

13 L ed 2d 142.

> In Brinegar the standard of probable cause is described:
>
> "Probable cause exists where 'the facts and cir-
> cumstances within their [the officers'] knowledge,
> and of which they had reasonably trustworthy in-
> formation, [are] sufficient in themselves to
> warrant a man of reasonable caution in the belief

- 4 -

that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 69 L ed 543, 555, 45 S.Ct. 280, 39 ALR 790."

In Beck probable cause was discussed as follows:

"The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it-- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v. United States, 338 U.S. 160, 175-176, 93 L ed 1879, 1890, 69 S Ct 1302; Henry v. United States, 361 U.S. 98, 102, 4 L ed 2d 134, 138, 80 S Ct 168. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accomodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' Brinegar v. United States, supra, 338 U.S. at 176, 93 L ed at 1891." (Emphasis supplied.)

With the foregoing as background, defendants argue that the facts of the present case known by the detectives prior to the arrests, did not constitute sufficient probable cause to make the arrests. They argue at length that the detectives relied principally upon the odor of drugs to base their probable cause to make the arrests, and that such probable cause does not constitute a legally recognized basis of probable cause to arrest. Defendants rely on Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L ed 436, 441 (1948).

Johnson examined the lawfulness of an arrest for possession of opium, when such warrantless arrest was based upon information given by a confidential informer pertaining to the use

- 5 -

of narcotics in a hotel room. Upon investigation four experienced narcotics agents confirmed that information, in recognizing the distinctive and unmistakable order of opium emanating from the room. An arrest was made and a search conducted incidental to the arrest, which uncovered opium and smoking apparatus.

The United States Supreme Court held in Johnson:

> " * * * Thus the Government <u>quite properly</u> <u>stakes the right to arrest, not on the in-</u> <u>former's tip and the smell the officers</u> <u>recognized before entry, but on the know-</u> <u>ledge that she was alone in the room, gained</u> <u>only after, and wholly by reason of, their</u> <u>entry of her home.</u> It was therefore their <u>observations inside of her quarters, after</u> <u>they had obtained admission under color of</u> <u>their police authority, on which they made</u> <u>the arrest.</u>

> "Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." (Emphasis supplied.)

Johnson carefully stressed the importance of testing evidence before a magistrate and the necessity of obtaining a search or arrest warrant prior to entry, arrest and search. An additional point stressed in Johnson was the necessity of looking to the law of the respective states:

> "Since it was without warrant, it [the arrest] could be valid only if for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty." (Bracketed

- 6 -

material added.) (Footnote at p. 441,
92 L ed: "State law determines the valid-
ity of arrests without warrant. United
States v. Di Re, 332 U.S. 581, ante, 210,
68 S Ct 222, decided January 5, 1948.")

The rationale of Johnson is that regardless of the in-

formation the officers had from all sources and the immediate

smell of opium emanating from the room, the arrest was finally

based on what was observed after entry. This reasoning would

restrict the warrentless arrest to acts committed within the

officers view outside any constitutionally protected area, and

provides for no exceptions.

Since Johnson in 1948, courts have recognized exceptional

circumstances which permit entry and arrest and expand the nar-

row view adopted in Johnson. Ker v. California, 374 U.S. 23,

83 S.Ct. 1623, 10 L ed 2d 726 (1963), involved a warrantless

arrest for possession of marijuana where probable cause to arrest

was founded upon police observation of the suspect, information

from a reliable informant, and an address uncovered by research

into the registry of an automobile license plate. The police

officers went to the apartment building and obtained a passkey

from the building manager which enabled the officers to enter

the apartment unannounced, thereby effecting the arrest and

search incidental to the arrest.

In Ker the defense contended that the lawfulness of

the petitioners' arrests, even if they were based upon probable

cause, was vitiated by the method of entry, to which the United

States Supreme Court answered in Section III of its opinion:

"This Court, in cases under the Fourth
Amendment, has long recognized that the
lawfulness of arrests for federal offenses

- 7 -

is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States, supra; United States v. Di Re, 332 U.S. 581 (1948); Johnson v. United States, 333 U.S. 10, 15, n. 5 (1948). A fortiori, the lawfulness of these arrests by state officers for state offenses is to be determined by California law. California Penal Code, §844, permits peace officers to break into a dwelling place for the purpose of arrest after demanding admittance and explaining their purpose. Admittedly the officers did not comply with the terms of this statute since they entered quietly and without announcement, in order to prevent the destruction of contraband. The California District Court of Appeal, however, held that the circumstances here came within a judicial exception which had been engrafted upon the statute by a series of decisions, see, e.g., People v. Ruiz, 146 Cal. App. 2d 630, 304 P.2d 175 (1956); People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, cert. denied, 352 U.S. 858 (1956), and that the noncompliance was therefore lawful.

"Since the petitioners' federal constitutional protection from unreasonable searches and seizures by police officers is here to be determined by whether the search was incident to a lawful arrest, we are warranted in examining that arrest to determine whether, notwithstanding its legality under state law, the method of entering the home may offend federal constitutional standards of reasonableness and therefore vitiate the legality of an accompanying search. We find no such offensiveness on the facts here. Assuming that the officers' entry by use of a key obtained from the manager is the legal equivalent of a "breaking," see Keiningham v. United States, 109 U.S. App. D.C. 272, 276, 287 F.2d 126, 130 (C.A.D.C. Cir. 1960), it has been recognized from the early common law that such breaking is permissible in executing an arrest under certain circumstances. See Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 541, 798, 800-806 (1924). Indeed, 18 U.S.C. §3109, dealing with the execution of search warrants by federal officers, authorizes breaking of doors in words very similar to those of the California statute, both statutes including a

requirement of notice of authority and purpose. * * *

"Finally, the basis of the judicial exception to the California statute, as expressed by Justice Traynor in People v. Maddox, 46 Cal.2d, at 306, 294 P.2d, at 9, effectively answers the petitioners' contention:

"'It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a palce where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (Read v. Case, 4 Conn. 166, 170 [10 Am. Dec. 110]; see Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance.'" (Emphasis supplied.)

The language in Ker becomes somewhat stronger when we recognize that after entry by the officers Mrs. Ker, who was present, was also placed under arrest, which strikes directly at the rationale of Johnson.

Section 95-608(d), R.C.M. 1947, requires, along with probable cause, that "existing circumstances require his immediate arrest." Within the constitutional guarantees of the Fourth

Amendment of the United States Constitution, the procedures of state law govern the circumstances which exist in each individual case prompting the arrest. Basically the immediacy of an arrest will rest, as it always has, on the "reasonable grounds" for the belief that an offense is being committed "or that the person has committed an offense and the existing circumstances require his immediate arrest."

Montana law does not have the statutory mandate contained in California Penal Code, §844, requiring the officers to first demand admittance and give an explanation of purpose. Nevertheless, the Montana Criminal Law Commission comment to section 95-606, R.C.M. 1947, recognized a similar procedure for warrantless arrests with the corresponding exceptions recognized in California. The Commission cited State v. Gay, 18 Mont. 51, 44 P. 411; State v. Bradsahw, 53 Mont. 96, 161 P. 710; and quoted directly from Altizer v. State, 21 Okl.Cr.App. 229, 205 P. 1106, 1108:

> "From the foregoing provisions it is seen that the first duty of an officer in attempting to make an arrest without a warrant (where the arrested person is not arrested during the actual commission of the offense or has escaped and is immediately pursued) is to inform the person to be arrested of his authority in so acting and the cause for so acting. If this simple provision of the statute were more closely observed by arresting officers (as it should be), we are convinced that there would be much less trouble in making arrests without a warrant."

A recent case before this Court, State v. Hull, _____ Mont._____, 487 P.2d 1314, 28 St.Rep. 721, raised the identical issue of probable cause to arrest absent a search warrant or a

- 10 -

warrant of arrest. In Hull, prior information from a reliable informant was collected, together with a police investigation, to give the police officers the following picture as described by this Court:

> "Here a 'pot party' was in progress, defendant was a guest at this party and a participant therein, and the aroma of burning or burnt marijuana was emanating from the premises, all of which was known to the officers prior to their entry, arrest, and search of the party-goers. As such, the defendant's connection with the illegal activities then and there in progress extends beyond his mere presence on the premises where officers have reason to believe there are drugs." (Emphasis supplied.)

Defendants here indicate in their argument that Johnson is the latest case (Federal 1948) involving "smell" and must control. First, the problem presented here involves a much wider area of consideration than just looking to cases involving a smell factor in the probable cause determination, as has been discussed. Second, this case involves more facts than just the smell of the drug, prior to entry.

In holding that there was sufficient probable cause to make a warrantless arrest in Hull, this Court was aware and gave consideration to the guarantees of the Fourth and Fourteenth Amendments of the United States Constitution. The Court was equally aware of the now well recognized exceptions that have been adopted in Montana since Johnson and approved by the United States Supreme Court.

Considering all the facts here involved, we find the arrests to be within the exceptions discussed.

- 11 -

Accordingly, the order of the district court suppressing the evidence is reversed. The cause is remanded for further proceedings.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices

- 12 -