No. 12675

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

_____

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

ALAN FETTERS and STEVE LEAN,

Defendants and Respondents.

_____

Appeal from: District Court of the Second Judicial District,
Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John P. Atkins, Assistant Attorney General, argued,
Helena, Montana
Larry Stimatz, County Attorney, argued, Butte,
Montana
J. Brian Tierney argued, Deputy County Attorney,
Butte, Montana

For Respondents:

Scanlon, Brolin and Connors, Anaconda, Montana
William A. Brolin argued and Joseph C. Connors
argued, Anaconda, Montana

_____

Submitted: June 17, 1974

Decided: SEP 3 1974

Filed: SEP 3 1974

Thomas J. Kearney

Clerk

Hon. M. James Sorte, District Judge, sitting for Chief Justice James T. Harrison, delivered the Opinion of the Court.

This is an appeal by the state of Montana from an order of the district court of Silver Bow County granting defendants' motion to suppress evidence in a criminal case.

Defendants Alan Fetters and Steve Lean were charged by Information in four counts: interference with railroad property; interference with railroad property causing death; murder; and malicious destruction of property.

In chronological order these events occurred:

On March 28, 1972, at approximately 8:00 p.m. a large diesel switch engine owned and operated by the Anaconda Company at the Weed Concentrator in Butte, Montana, was left by the crew in a locked and secured position. The crew left the engine idling with the air set and three large slurry cars connected to it while they went to lunch.

At approximately 8:05 to 8:15 p.m. an employee saw the switch engine, without the slurry cars attached and without its light on, leave the concentrator yard. He noticed two men in the engine but could not describe their physical characteristics nor wearing apparel. Two employees were immediately dispatched from the concentrator yard to look for any signs of the engine that had just left. They went out of the concentrator area and drove down Continental Drive where they saw defendant Fetters' white Cadillac automobile parked in a turnout area of Continental Drive and Howard Street. The car was no longer there 30 minutes later. The license number was reported and verified by local police as belonging to Fetters.

At approximately 8:30 p.m. the switch engine smashed into the rear of a Butte, Anaconda and Pacific ore train in the Rocker Yards approximately six miles west of the concentrator. Two BA&P employees, Jack Weist and Vern Johnson, were on the ore train at the time. Weist was killed instantly by the crash and Johnson was thrown

from the caboose, which was shattered by the collision, and suffered a broken leg.

The facts further show that defendants went into the Race Track Bar between 8:30 and 8:45 p.m., ordered drinks and also requested salve for Fetters who had apparently burned some portion of his body. The Race Track Bar was approximately two blocks from where Fetters' car was parked.

Before defendants were arrested it was also ascertained that they were currently employed by the Anaconda Company at the concentrator yard. Defendants had personal knowledge of how to run that particular engine; in fact, Fetters was scheduled to operate the engine on the March 28, 1972, afternoon shift. Both defendants failed to report to work that day.

George Evans, security officer of the Anaconda Company, informed the investigating sheriff that he had observed two separate sets of footprints in the snow directly across the roadway from where Fetters' Cadillac was seen earlier that evening. The footprints led to an area 60-70 feet into the concentrator area. Evans neither observed footprints on the south side of Continental Drive where the vehicle was parked nor within 300 yards or better from the switch engine. The tracks neither went from the car to the fence nor from the fence to the engine. The footprints revealed that they were made by a square-toe type shoe or boot with separate and definite heel markings. Evans immediately covered the footprints with cardboard boxes until photographs could be taken.

All of these facts were known to Silver Bow County Attorney Lawrence Stimatz and Silver Bow Sheriff Rock Cunningham. After analyzing all the facts Stimatz directed law enforcement officers to arrest Fetters and Lean without a warrant.

Stimatz testified at the hearing on the motion to suppress the evidence:

> "We were quite interested in locating and arresting Fetters and Lean. We thought a crime had been committed and that these men had done it and that certain evidence had to be preserved. We wanted to look at their shoes and we wanted to look at their clothes for grease spots or anything else that they might have had on them from being inside that train."

- 3 -

Fetters was arrested without a warrant at 5:00 a.m. at his home on March 29, 1972. Lean was arrested without a warrant at his home at 6:20 a.m. that same morning. Both defendants were taken from their homes to the sheriff's office where their clothing was taken from them. They were questioned, placed in jail, and released the afternoon of March 29, 1972, without being charged in justice court or district court. Their personal belongings which were seized by the sheriff's officers were not returned to them. Defendants were arrested again on May 19, 1972, and charged in justice court.

On October 20, 1972, District Judge John B. McClernan granted defendants' motion to suppress all the physicial evidence and statements obtained from and after the arrests.

An appeal was taken from that order and this Court vacated the district court's order on May 15, 1973, because there had never been a proper formal suppression hearing. State of Montana v. Alan Fetters and Steve Lean, _____Mont._____, 510 P.2d 1, 30 St.Rep. 543.

Thereafter Judge McClernan was disqualified and District Judge James D. Freebourn held a formal hearing and on November 26, 1973, ordered the suppression of the evidence seized as a result of the warrantless arrest.

The order of Judge Freebourn was appealed to this Court, and following argument and consideration of the case, this Court reset the matter for a second argument.

Two issues are presented for review:

1. Whether the district court erred in finding that the arrest was unlawful?

2. Whether the search made incident to that arrest was unlawful?

As to the first issue, section 95-608, R.C.M. 1947, sets forth the instances in which a person may be arrested. It provides:

"A peace officer may arrest a person when:

"(a) He has a warrant commanding that such person be arrested, or
"(b) He believes, on reasonable grounds, that a warrant for the person's arrest has been issued in this state, or

"(c) He believes, on reasonable grounds, that a felony warrant for the person's arrest has been issued in another jurisdiction, or
"(d) <u>He believes on reasonable grounds, that the person is committing an offense, or that the person has committed an offense and the existing circumstances require his immediate arrest.</u>"
(Emphasis added)

The state contends the arrests in the instant case were justified under section 95-608(d), R.C.M. 1947, because the officers did have reasonable grounds to believe the defendants had committed an offense. In State v. Bennett, 158 Mont. 496, 499, 493 P.2d 1077, this Court held that probable cause has been defined as "'reasonable grounds for belief of guilt.'" Reasonable grounds and probable cause are synonymous.

The validity of the search and seizure of defendants' clothing, shoes, and all other physical evidence and statements obtained from and after the arrests must depend upon the validity of defendants' arrest. Whether the arrests were valid depends, in turn, upon whether at the moment the arrests were made the officers had probable cause--i.e. whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing defendants had committed or were committing an offense and the circumstances required their immediate arrests. Section 95-608(d), R.C.M. 1947; State v. Bennett, supra; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L ed 1879.

Evidence required to establish guilt is not necessary to prove probable cause for an arrest. On the other hand, good faith or mere suspicion on the part of the arresting officers is not enough. And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. An arrest is not justified by what the subsequent search discloses. Henry v. United States, 361 U.S. 98; 80 S.Ct. 168, 4 L ed 2d 134; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L ed 543.

All of the recent Montana cases interpreting "probable cause" as used in section 95-608(d), R.C.M. 1947, deal with a defendant's possession or sale of dangerous drugs. In Bennett, this Court held there was sufficient probable cause to justify the arrest without a warrant. In Bennett, however, officers had received information from the owner of the apartment and also a reliable informant that drugs were being used in the apartment. They also had information that the one accused was a dealer in drugs and, when the officers went to the apartment to investigate, they observed the accused enter the apartment and walk toward apartment 4-W. At this time they were in the common lobby and as they proceeded toward the apartment they found the door open and a marijuana odor emanating therefrom.

On the other hand, in State ex rel. Glantz v. Dist.Court, 154 Mont. 132, 139, 461 P.2d 193, this Court ruled that no probable cause existed for defendant's arrest and dismissed the proceedings against her. In Glantz the officers had a search warrant naming two particular people and a particular premises to be searched for possession of dangerous drugs. The other defendant, Linda Pickett, happened to be on the premises at the time of the search and she was also arrested. She was taken to the police station and sub- sequently searched and it was there that an immeasurable quantity of marijuana was found on her person. This Court said:

> "* * * There is ample authority for the proposi-
> tion that the mere fact a person is on premises
> where officers have reason to believe there are
> drugs will not justify his arrest or a search of
> his person. [Citing cases]"

In another recent Montana case, State v. Bentley, 156 Mont. 129, 134, 477 P.2d 345, the defendant assaulted a citizen and before he sped off in his car, someone spotted a pillow and bags in the trunk of his car. He was arrested and the car taken to the police station. An application for a search warrant was later made and granted after the police judge received information that defendant was a burglar and used drugs. In Bentley, this Court said:

> "Montana cannot guarantee less protection for a
> citizen under its laws than is demanded by the
> Constitution of the United States. Therefore, the
> mere presence of a pillow and bags in the trunk
> of a car taken by themselves (like the telephones
> in the Spinelli case) do not constitute sufficient
> evidence of a crime to issue a search warrant for
> burglar tools or illegal drugs, and a judge's
> personal inferences that respondent is a burglar
> adds nothing toward probable cause of the commission
> of a crime on these facts."

Thus, in the instant case, as in <u>Glantz</u> and <u>Bentley,</u> the mere presence of defendant's car in the area, footprints in the general vicinity, or any personal inferences that the officers may have had about defendants because they missed work and knew how to run the switch engine is mere speculation, not sufficient to constitute probable cause to arrest as determined by the district court.

We do not believe it necessary to go into a more detailed analysis of probable cause. It has been defined, interpreted and redefined by many federal and state cases cited earlier in this opinion. The state asks the Court to consider United States v. Edwards, ____U.S.____, 94 S.Ct. 1234, 39 L ed 2d 771. That case must be distinguished from this case because the custodial search without a search warrant was made after a lawful arrest.

Here, the question of the validity of the initial arrest and subsequent search and seizure was before the district court on two occasions. In both instances, and with different judges ruling, the evidence was ordered suppressed.

In Patterson v. Halterman, ____Mont.____, 505 P.2d 905, 30 St. Rep. 139, 144, this Court stated the rule of appeal and error:

> "In Stromberg v. Seaton Ranch Co., ____Mont.____, 502
> P.2d 41, 48, 29 St.Rep. 848, this Court stated the
> pertinent rule of appeal and error which must be applied
> to the factual issues raised on appeal:
>
> > "'As is indicated in the summary of the facts,
> > there was an unusual amount of evidence presented to the
> > trial judge which resulted in numerous conflicts in the
> > evidence. He was the one who had the only opportunity
> > to see and hear all witnesses. Each party makes a strong
> > argument that these facts and circumstances favor his
> > position. Yet, as has been stated by this Court too
> > many times to require citation, it is not this Court's
> > province to review the record of the trial court to
> > determine whether or not we agree with the conclusions

reached, if supported by the evidence. We must indulge the presumption that the judgment of the district court is correct and will not be disturbed unless there is a clear preponderance of evidence against it when viewed in the light most favorable to the prevailing party * * *'".

This is in conformity with the rule established in Morrison v. City of Butte, 150 Mont. 106, 431 P.2d 79, and quoted in Raucci v. Davis, _____Mont._____, 505 P.2d 887, 30 St.Rep. 133, 135:

> "'Thus, there is a conflict in the testimony from which different conclusions could be drawn. The credibility of witnesses and the weight to be given their testimony are for the trial court. [citation omitted]. This court will not overturn the holding or findings of a trial court unless there is a decided preponderance of the evidence against them, and, when the evidence furnishes reasonable grounds for different conclusions, findings will not be disturbed. [citation omitted]"

There may be a difference of opinion as to whether the facts known to the officers prior to the arrest constitute probable cause. However, we will not substitute our judgment for that of the district court when there are reasonable grounds for its ruling.

In light of our ruling on the first issue that the arrest was unlawful, it is not necessary to discuss the second issue concerning the search that followed the arrest.

The district court's order suppressing evidence is affirmed.

Hon. M. James Sorte, District Judge, sitting for Chief Justice James T. Harrison.


We Concur:


_____

Justices.

- 8 -

Mr. Justice Castles dissenting:

I dissent.

The following facts were known at the time of the arrest:

1. An employee of the Concentrator saw the engine going through a switch. It then sped up and darted out of the yards.

2. This employee saw two men inside the engine compartment. These men could not be identified.

3. It was determined that only certain people who had a working knowledge of how the engine ran, could have activated the engine. They would have had to have knowledge of how to uncouple the cars, put the bus bar in, release the air, activate the switch from within the engine, and several other steps.

4. Other employees attempted to intercept or follow the engine. These employees, as they left the Concentrator yards, noticed an automobile belonging to the Defendant Fetters parked alongside the road just outside a fence that surrounds the Concentrator.

5. These two employees, upon their return to the Concentrator around 8:45 p.m., found that Fetters' automobile was gone.

6. At approximately 8:45 p.m. defendants came into the Race Track Bar which is located three blocks from where the car was seen. Mr. Lean asked the bartender for some salve and stated that Mr. Fetters had burned himself.

7. That two sets of footprints, which were made in the snow, were discovered. These footprints led from the automobile which was parked on Continental Drive to a fence which surrounds the Concentrator, and then to the area where the engine was parked.

8. That both defendants were employees of the Anaconda Company and were employed at the Concentrator. Both defendants were scheduled to work the afternoon shift on the day in question; that one of the defendants reported off for that day and the other defendant dumped a shift; that both defendants had personal knowledge of how to run this particular engine; that defendant Fetters was

scheduled to operate the engine that afternoon; that both defendants knew exactly what time the employees left for lunch on the afternoon shift; that both defendants knew where the engine was left during the lunch period and how the engine was secured during this period; that both defendants were positively identified as being in the Race Track Bar which is approximately two or three blocks at a time approximately 45 minues after the theft.

Taken together, all of these factors establish in my opinion probable cause for the arrest on reasonable grounds.

I would reverse the trial judge.


_Wesley Castles_
_____
Justice.


Mr. Justice John Conway Harrison dissenting:

I dissent and concur with the foregoing dissenting opinion of Justice Castles.

_John Conway Harrison_
_____
Justice.