HON. M. JAMES SORTE, District Judge,
The sitting for MR. CHIEF JUSTICE JAMES T. HARRISON, delivered the Opinion of the Court.
This is an appeal by the state of Montana from an order of the district court of Silver Bow County granting defendants’ motion to suppress evidence in a criminal case.
Defendants Alan Fetters and Steve Lean were charged by Information in four counts: interference with railroad property; interference with railroad property causing death; murder; and malicious destruction of property.
In chronological order these events occurred:
On March 28, 1972, at approximately 8 -.00 p.m. a large diesel *119 switch engine owned and operated by the Anaconda Company at the Weed Concentrator in Butte, Montana, was left by the crew in a locked and secured position. The crew left the engine idling with the air set and three large slurry cars connected to it while they went to lunch.
At approximately 8:05 to 8:15 p.m. an employee saw the switch engine, without the slurry cars attached and without its light on, leave the concentrator yard. He noticed two men in the engine but could not describe their physical characteristics nor wearing apparel. Two employees were immediately dispatched from the concentrator yard to look for any signs of the engine that had just left. They went out of the concentrator area and drove down Continental Drive where they saw defendant Fetters’ white Cadillac automobile parked in a turnout area of Continental Drive and Howard Street. The. car was no longer there 30 minutes later. The license number was reported and verified by local police as belonging to Fetters.
At approximately 8:30 p.m. the switch engine smashed into the rear of a Butte, Anaconda and Pacific ore train in the Rocker Yards approximately six miles west of the concentrator. Two BA&P employees, Jack Weist and Yern Johnson, were on the ore train at the time. Weist was killed instantly by the crash and Johnson was thrown from the caboose, which was shattered by the collision, and suffered a broken leg.
The facts further show that defendants went into the Race Track Bar between 8:30 and 8:45 p.m., ordered drinks and also requested salve for Fetters who had apparently burned some portion of his body. The Race Track Bar was approximately two blocks from where Fetter’s car was parked.
Before defendants were arrested it was also ascertained that they were currently employed by the Anaconda Company at the concentrator yard. Defendants had personal knowledge of how to run1 that particular engine; in fact, Fetters.was scheduled to operate the engine on the March 28, 1972, afternoon shift. Both defendants failed to report to work that day.
*120 George Evans, security officer of the Anaconda Company, informed the investigating sheriff that he had observed two separate sets of footprints in the snow directly across the roadway from where Fetters’ Cadillac was seen earlier that evening. The footprints led to an area 60-70 feet into the concentrator area. Evans neither observed footprints on the south side of Continental Drive where the vehicle was parked nor within 300 yards or better from the switch engine. The tracks neither went from the car to the fence nor from the fence to the engine. The footprints revealed that they were made by a square-toe type shoe or boot with separate and definite heel markings. Evans immediately covered the footprints with cardboard boxes until photographs could be taken.
All of these facts were known to Silver Bow County Attorney Lawrence Stimatz and Silver Bow Sheriff Bock Cunningham. After analyzing all the facts Stimatz directed law enforcement officers to arrest Fetters and Lean without a warrant.
Stimatz testified at the hearing on the motion to suppress the evidence:
“We were quite interested in locating and arresting Fetters and Lean. We thought a crime had been committed and that these men had done it and that certain evidence had to be preserved. We wanted to look at their shoes and we wanted to look at their clothes for grease spots or anything else that they might have had on them from being inside that train.”
Fetters was arrested without a warrant at 5:00 a.m. at his home on March 29, 1972. Lean was arrested without a warrant at his home at 6:20 a.m. that same morning. Both defendants were taken from their homes to the sheriff’s office where their clothing was taken from them. They were questioned, placed in jail, and released the afternoon of March 29, 1972, without being charged in justice court or district court. Their personal belongings which were seized by the sheriff’s officers were not returned to them. Defendants were arrested again on May 19, 1972, and charged in justice court.
*121 On October 20, 1972, District Judge John B. MeClernan granted defendants’ motion to suppress all the physical evidence and statements obtained from and after the arrests.
An appeal was taken from that order and this Court vacated the district court’s order on May 15, 1973, because there had never been a proper formal suppression hearing. State of Montana v. Alan Fetters and Steve Lean, 162 Mont. 204, 510 P.2d 1, 30 St. Rep. 543.
Thereafter Judge MeClernan was disqualified and District Judge James D. Freebourn held a formal hearing and on November 26, 1973, ordered the suppression of the evidence seized as a result of the warrantless arrest.
The order of Judge Freebourn was appealed to this Court, and following argument and consideration of the ease, this Court reset the matter for a second argument.
Two issues are presented for review:
1. Whether the district court erred in finding that the arrest was unlawful?
2. Whether the search made incident to that arrest was unlawful?
As to the first issue, section 95-608, R.C.M. 1947, sets forth the instances in which a person may be arrested. It provides:
“A peace officer may arrest a person when:
“ (a) He has a warrant commanding that such person be arrested, or
“(b) He believes, on reasonable grounds, that a warrant for the person’s arrest has been issued in this state, or
“(c) He believes, on reasonable grounds, that a felony warrant for the person’s arrest has been issued in another jurisdiction, or
“(d) He believes on reasonable grounds, that the person is committing an offense, or that the person has committed an offense and the existing circumstances require his immed/iate arrest.” (Emphasis added)
*122 The state contends the arrests in the instant case were justified under section 95-608 (d), R.C.M. 1947, because the officers did have reasonable grounds to believe the defendants had committed an offense. In State v. Bennett, 158 Mont. 496, 499, 493 P.2d 1077, this Court held that probable cause has been defined as “ ‘reasonable grounds for belief of guilt.’ Reasonable grounds and probable cause are synonymous.
The validity of the search and seizure of defendants’' clothing, shoes, and all other physical evidence and statements obtained from and after the arrests must depend upon the validity of defendants’ arrest. Whether the arrests were valid depends, in turn, upon whether at the moment the arrests were made the officers had probable cause — i. e. whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing defendants had committed or were committing an offense and the circumstances required their immediate arrests. Section 95-608 (d), R.C.M. 1947; State v. Bennett, supra; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.
Evidence required to establish guilt is not necessary to prove probable cause for an arrest. On the other hand, good faith or mere suspicion on the part of the arresting officers is not enough. And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. An arrest is not justified by what the subsequent search discloses. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.
All of the recent Montana cases interpreting “probable cause” as used in section 95-608(d), R.C.M. 1947, deal with a defendant’s possession or sale of dangerous drugs. In Bennett, this Court held there was sufficient probable cause to justify the arrest without a warrant. In Bennett, however, officers. *123 had received information from the owner of the apartment and also a reliable informant that drugs were being used in the apartment. They also had information that the one accused was a dealer in drugs and, when the officers went to the apartment to investigate, they observed the accused enter the apartment and walk toward apartment 4-W. At this time they were in the common lobby and as they proceeded toward the apartment they found the door open and a marijuana odor emanating therefrom.
On the other hand, in State ex rel. Glantz v. Dist. Court, 154 Mont. 132, 139, 461 P.2d 193, this Court ruled that no probable cause existed for defendant’s arrest and dismissed the proceedings against her. In Giants the officers had a search warrant naming two particular people and a particular premises to be searched for possession of dangerous drugs. The other defendant, Linda Pickett, happened to be on the premises at the time of the search and she was also arrested. She was taken to the police station and subsequently searched and it was there that an immeasurable quantity of marijuana was found on her person. This Court said:
<i* * * There is ample authority for the proposition that the mere fact a person is on premises where officers have reason to believe there are drugs will not justify his arrest or a search of his person. [Citing cases] ”
In another recent Montana case, State v. Bentley, 156 Mont. 129, 134, 477 P.2d 345, 347, the defendant assaulted a citizen and before he sped off in his car, someone spotted a pillow and bags in the trunk of his car. He was arrested and the car taken to the police station. An application for a search warrant was later made and granted after the police judge received information that defendant was a burglar and used drugs. In Bentley, this Court said:
“Montana cannot guarantee less protection for a citizen under its laws than is demanded by the Constitution of the United States. Therefore, the mere presence of a pillow and *124 bags in the trunk of a ear taken by themselves (like the telephones in the Spinelli ease) do not constitute sufficient evidence of a crime to issue a search warrant for burglar tools, or illegal drugs, and a judge’s personal inferences that respondent is a burglar adds nothing toward probable cause of the' commission of a crime on these facts.”
Thus, in the instant case, as in Giants and Bentley, the-mere presence of defendant’s car in the area, footprints in the general vicinity, or any personal inferences that the officers, may have had about defendants because they missed work and knew how to run the switch engine is mere speculation, not sufficient to constitute probable cause to arrest as determined by the district court.
We do not believe it necessary to go into a more detailed analysis of probable cause. It has been defined, interpreted and redefined by many federal and state cases cited earlier in this opinion. The state asks the Court to consider United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771. That ease must be distinguished from this case because the custodial search without a search warrant was made after a lawful arrest.
Here, the question of the validity of the initial arrest and subsequent search and seizure was before the district court on two occasions. In both instances, and with different judges, ruling, the evidence was ordered suppressed.
In Patterson v. Halterman, 161 Mont. 278, 505 P.2d 905, 30 St.Rep. 139, 144, this Court stated the rule of appeal and error:
“In Stromberg v. Seaton Ranch Co., 160 Mont. 293, 502 P.2d 41, 48, 29 St.Rep. 848, this Court stated the pertinent rule of appeal and error which must be applied to the factual issues, raised on appeal:
“ ‘As is indicated in the summary of the facts, there was an unusual amount of evidence presented to the trial judge which resulted in numerous conflicts in the evidence. He was the one-who had the only opportunity to see and hear all witnesses.. Each party makes a strong argument that these facts and cir *125 cumstanees favor his position. Yet, as has been stated by this Court too many times to require citation, it is not this Court’s province to review the record of the trial court to determine whether or not we agree with the conclusions reached, if supported by the evidence. We must indulge the presumption that the judgment of the district court is correct amd will not be disturbed unless there is a clear preponderance of evidence against it when viewed m the light most favorable to the prevailing party * * *.’ ”
This is in conformity with the rule established in Morrison v. City of Butte, 150 Mont. 106, 431 P.2d 79, and quoted in Raucci v. Davis, 161 Mont. 270, 505 P.2d 887, 30 St.Rep. 133, 135:
“Thus, there is a conflict in the testimony from which different conclusions could be drawn. The credibility of witnesses and ■the weight to be given their testimony are for the trial court, [citation omitted]. This Court will not overturn the holding or findings of a trial court unless there is a decided preponderance of the evidence against them, and, when the evidence furnishes reasonable grounds for different conclusions, findings will not be disturbed, [citation omitted]”
There may be a difference of opinion as to whether the facts known to the officers prior to the arrest constitute probable cause. However, we will not substitute our judgment for that ■of the district court when there are reasonable grounds for its ruling.
In light of our ruling on the first issue that the arrest was unlawful, it is not necessary to discuss the second issue concerning the search that followed the arrest.
The district court’s order suppressing evidence is affirmed.
MR. JUSTICES HASWELL and DALY concur.