THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
HAROLD JESSE MEADORS, DEFENDANT AND APPELLANT.

No. 14028.
Submitted March 6, 1978.
Decided May 31, 1978.
580 P.2d 903.

Poppler & Braz, Billings, Diane Barz (argued), Billings, for defendant and appellant.

Mike Greely, Atty. Gen., J. Mayo Ashley, Asst. Atty. Gen. (argued), Helena, Harold Hanser, County Atty., James D. Walsh, Deputy County Atty., (argued), Billings, for plaintiff and respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Defendant Harold Jesse Meadors appeals his conviction on two counts of criminal possession of dangerous drugs and from denial of his pretrial motion to suppress certain evidence.

On June 4, 1977, between 7:00 and 8:00 a.m., Officer Bruce Oberg of the Billings Police Department responded to a call that a suspicious vehicle was parked on Black Otter Trail, on top of the rimrocks overlooking the City of Billings. Officer Oberg found an automobile with Wyoming license plates parked in the eastbound land facing west, blocking the road. He observed defendant slumped against the driver's door, apparently asleep.

When Officer Oberg looked into the car, he saw that the ignition lights on the car's dashboard were on and observed a marijuana pipe resting in the open ashtray. Oberg shook defendant awake and asked him to get out of the car. As defendant was doing so, Oberg noticed a small vial containing a small amount of white residue powder and a yellow and a red pill in defendant's right front watch pocket which defendant pushed back into his pocket.

In response to Officer Oberg's request for identification, defendant gave his name and birthdate and informed Oberg that Detective Trimarco of the Yellowstone County Sheriff's Department knew him.

Because defendant could not produce any identification, Officer Oberg asked him to empty his pockets onto the hood of the car. Officer Oberg testified he was looking for identification and for the vial he had seen earlier. When defendant did not produce the vial, Officer Oberg told defendant "I want the vial out of your watch pocket." Defendant then produced two vials, one empty and the other containing the white powder and two pills.

By this time Officer Gary Hatfield arrived on the scene to back up Officer Oberg. When asked whether he had any vehicle registration, defendant replied he did not. Officer Hatfield then instituted a check for the registered owner of the car through the Billings Police Department; the NCIC, a national list of stolen vehicles; and the Wyoming Department of Motor Vehicles.

In response to Officer Oberg's request for permission to enter the car to look for a registration certificate, defendant refused. Nonetheless, Officer Oberg entered the car and checked the glove compartment where he found one bag containing marijuana and another bag containing a large quantity of amphetamine tablets.

Officer Hatfield then reported there were no locally listed warrants on the vehicle. Officer Oberg then informed Officer Hatfield of the drugs he had found in the glove compartment and instructed Hatfield to arrest defendant. After arresting defendant, Officer Hatfield advised him of his rights and conducted a search of his person. During this search he discovered an aspirin bottle containing more amphetamines and another vial containing two marijuana cigarettes.

After Officers Oberg and Hatfield called for assistance in bringing defendant's vehicle to the police station, they took defendant to the police station. Once there, the police obtained a search warrant to search defendant's vehicle and found more amphetamines and marijuana inside the can and in the trunk. In all, the police found more than 15,000 amphetamine tablets and over 360 grams of marijuana in defendant's possession.

Later a report from the Wyoming Department of Motor Vehicles revealed the car was registered to defendant. During the search of defendant's vehicle pursuant to the search warrant, the police also found defendant's driver identification on the front windshield visor.

Defendant was charged by Information in District Court, Yellowstone County, with two counts of criminal possession of dangerous drugs: Count I for possessing more than sixty grams of marijuana of "the approximate weight of 368.5 grams", and

Count II for possessing 15,785 amphetamine tablets. Defendant plead not guilty to both counts and moved to suppress all evidence seized as a result of the search of his person and his vehicle. After an evidentiary hearing, the District Court denied defendant's motion to suppress. Defendant sought review of this denial by a writ of supervisory control, which this Court denied. *State ex rel Meadors v. District Court*, No. 13965, September 14, 1977. Defendant was subsequently convicted by jury on both counts and sentenced to 5 years imprisonment in the state prison on each count, to run consecutively.

In his appeal defendant raises three specifications of error:

1. Denial of defendant's motion to suppress.

2. Conviction of two separate crimes based on possession of two different dangerous drugs on the same occasion.

3. Failure to direct a verdict in favor of defendant for failure to prove defendant possessed the exact amount of drugs alleged in the Information.

At the outset, we note that four separate searches are involved in this case: (1) the warrantless search of defendant when ordered to empty his pockets; (2) the warrantless search of defendant's glove compartment; (3) the warrantless full body search of defendant following arrest; and (4) the search of defendant's vehicle at the police station pursuant to the search warrant.

Defendant contends that initial searches of his person and his vehicle without the benefit of a warrant were illegal because they did not fall within any of the recognized exceptions to the search warrant requirement. He further concludes that the subsequent searches of his person and vehicle were tainted by the initial illegality and, therefore, the evidence obtained from all four searches must be suppressed.

The state claims the initial search of defendant was valid as a search incident to a lawful arrest under the rule that a search *prior* to actual arrest is valid as a search incident to a lawful arrest if the officer had probable cause to *arrest* the defendant at the time of the search. *Cipres v. United States* (9th Cir. 1965), 343 F.2d 95; *State*

*v. Smith* (1977), 88 Wash.2d 127, 559 P.2d 970; *Layland v. State* (Alaska 1975), 535 P.2d 1043; *State V. Brooks* (1961), 57 Wash.2d 422, 357 P.2d 735.

A search incident to a lawful arrest is a recognized exception to the warrant requirement for lawful searches and seizures. Section 95-701(a), R.C.M.1947. Other jurisdictions have held tha if the search is made substantially contemporaneously to the arrest, it makes no difference that the search precedes rather than follows the arrest. *Cipres v. United States*, supra; *Layland v. State*, supra; *State v. Brooks*, supra. The rationale has been stated in this language:

"* * * if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested and the place where he is arrested, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceedng his arrest than it would from the same search following it." *People v. Simon*, (1955) 45 Cal.2d 645, 290 P.2d 531, 533.

This rationale makes sense. The rule is sound. We hold that a search incident to a lawful arrest is not rendered illegal simply because it precedes rather than follows the arrest. This rule is subject to three limitations: (1) the officer must have been able to effect a lawful arrest at the time of making a search; (2) the actual arrest must be made substantially contemporaneous with the search, and (3) the search must satisfy the permissible scope and purpose of a search incident to a lawful arrest.

In Montana, a peace officer may make a warrantless arrest when he believes on reasonable grounds that a person is committing an offense, or that the person has committed an offense and the ex-

isting circumstances require his immediate arrest. In section 95-608(d), R.C.M.1947, the term "reasonable grounds" is synonymous with the term "probable cause". *State v. Fetters and Lean* (1974), 165 Mont. 117, 122, 526 P.2d 122.

In the instant case did Officer Oberg have probable cause to arrest defendant at the time he first searched him? Probable cause to arrest exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *State v. Lenon* (1977), 174 Mont. 264, 570 P.2d 901, 905.

In this case Officer Oberg found defendant asleep between 7:00 and 8:00 a.m. in a car which was parked in the wrong lane of traffic blocking the road. The roadway was part of a paved scenic drive overlooking the City of Billings, although not a regular street. The car's ignition lights were on and a marijuana pipe was resting in the ashtray. Defendant could neither produce any personal identification nor registration for the car bearing out-of-state license plates. Officer Oberg saw a vial sticking out of defendant's pocket which contained white powder and a red and a yellow pill. Officer Oberg thought these items were drugs and drug paraphernalia, based on his prior police experience. These circumstances constituted probable cause for Officer Oberg to arrest defendant at the time he first searched him.

Defendant next charges the search of his glove compartment. He claims that it was outside the permissible scope of a search incident to an arrest. At the time Officer Oberg searched defendant's glove compartment, defendant was standing outside his car. He was not yet under actual arrest, not was he handcuffed. Officer Oberg entered the car to search the glove compartment for a vehicle registration certificate. There he found approximately 54 grams of marijuana and 6,930 amphetamine tablets. Even assuming, without deciding, that Oberg's search of the glove compartment was illegal, there still remained sufficient untainted evidence on

which to base defendant's conviction on both the felony possession of marijuana and amphetamine charges.

Defendant's challenge to the third and fourth searches rests upon his assumption that the first two searches were illegal. Our holding that Oberg's first search of defendant was legal and that he had probable cause to arrest defendant at that point eliminates defendant's challenge to the third and fourth searches.

Officer Oberg had probable cause to arrest defendant at the time of the first search. The first search disclosed what appeared to be prohibited drugs on defendant's person. A marijuana pipe was seen resting in an open ashtray in the car. The third search after defendant's arrest was a full body search authorized as an incident to the lawful arrest. Section 95-702, R.C.M. 1947; *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Gustafson v. Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456. The third search disclosed an asprin bottle containing what appeared to be more amphetamines and another vial containing what appeared to be two marijuana cigarettes. The fourth search was a search of defendant's car pursuant to a search warrant where still more amphetamines and marijuana were found inside the car and in the trunk. Thus the evidence found during the third and fourth searches was admissible.

Defendant's second specification of error is whether he may be charged and convicted of a separate offense for each type of prohibited drug found in his possession during the same transaction or occurrence. He argues that the statute under which he was charged, section 54-133, R.C.M. 1947, in unclear on this point and therefore, this Court should follow the rule the United States Supreme Court adopted in *Bell v. United States* (1955), 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905.

In *Bell*, petitioner transported two women at the same time across a state line for purposes of immoral conduct. He was subsequently charged with two separate offenses of violating the Mann Act, 18 U.S.C. § 2421. Petitioner argued his conduct constituted only one violation of the Mann act. Because the Supreme Court felt

the statute was ambiguous as to what Congress had intended to make the allowable unit of prosecution, it resolved the ambiguity in favor of leniency. *Bell v. United States,* supra.

The issue in the instant case is whether the Montana Legislature intended to treat the drugs prohibited by section 54-133, R.C.M.1947, as a generic group thereby outlawing possession of the entire group as a whole, or whether it intended to provide a distinct crime as to each of the prohibited drugs.

At the time of commission of the offenses charged, section 54-133(a) provided:

"A person commits the offense of criminal possession of dangerous drugs if he possesses any dangerous drug as defined in this act."

The phrase "any dangerous drug as defined in this act" means any drugs defined in section 54-301, R.C.M.1947. *State ex rel. Lance v. District Court,* (1975), 168 Mont. 297, 542 P.2d 1211. Subsection (b) of section 54-133 provided criminal penalties for both misdemeanors and felong possession of marijuana, and subsection (c) provided criminal penalties for dangerous drugs not otherwise provided for in subsection (b).

The legislature thus specifically spelled out what kinds or types of drugs were prohibited; provided different penalties for possession of these different types or kinds; and, provided different penalties for possession of specific drugs based on the quantity or amount possessed. Therefore, we conclude the legislature did not intend to treat all prohibited drugs as a generic group or unit, but meant to provide a distinct crime for possessing each different kind of prohibited drug.

This legislative intent is further supported by a 1977 amendment singling out and providing separate and distinct criminal penalties for possession of an opiate. Sec. 2, Ch. 584, Laws 1977.

For the foregoing reasons, the *Bell* rule is inapplicable to this case.

We are supported in our decision by *State v. Adams* (Del.Super. 1976), 364 A.2d 1237. In *Adams* the defendant was charged with

seven counts arising out of the possession of drugs at the same time. Four of the counts were based on possession with intent to deliver four different nonnarcotic controlled substances. The defendant moved to dismiss these four counts, to consolidate them into one offense, or to consolidate them into a single conviction, should he be found guilty. As does Montana, Delaware also has a version of the Uniform Controlled Substances Act. (Uniform Controlled Substances Act, 9 U.L.A. 145 (1973; Sections 54-301 to 327, R.C.M.1947; 16 Del.C.Anno. §§ 4701-78.) The court found that the intent of Delaware's Controlled Substances Act was to prevent the existence of a particular substance in the hands of anyone other than a licensed person and found equal emphasis upon prohibition of the particular substance, as well as upon prohibition of the act of possession. Consequently it denied the defendant's motion. In coming to its conclusion the Delaware court said:

"* * * there is no requirement that each substance be dealt with in a separate section of the statute in order for a separate crime to be created. Nor is it required that there be language specifically stating that each separate substance which is possessed or delivered shall constitute a separate offense. The essential requirement is that it fairly appear that the legislature intended that each substance be dealt with separately for purpose of delineating a crime and that the language express it." *State v. Adams*, 364 A.2d 1239.

Defendant cites cases from other jurisdictions which refused to interpret their narcotics laws as allowing separate offenses for possession of each type of prohibited drug possessed on the same occasion. *United States v. Martin* (W.D.Pa.1969), 302 F.Supp. 498, aff'd 428 F.2d 1140 (3rd Cir. 1970), cert.den., 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269; *Parmagini v. United States* (9th Cir. 1930), 42 F.2d 721; *Braden v. United States* (8th Cir. 1920), 270 F. 441. We reject these holdings as they involve interpretations of statutes whose framework substantially differs from the Montana statute.

Defendant also contends that he may not be convicted of more than one offense of possession of dangerous drugs. Montana's

statutes clearly provide to the contrary. An Information may charge two or more offenses connected in their commission. Defendant may be convicted of any number of the offenses charged, as the prosecution is not required to elect between them. Section 95-1504(1), R.C.M.1947. But where the same transaction establishes the commission of more than one offense, the number of convictions obtainable is limited by section 95-1711(2), R.C.M.1947. In such situation defendant may be prosecuted for each offense arising out of the same transaction with certain statutory exceptions:

"(2) * * * He may not, however, be convicted of more than one offense if:

"(a) one offense is included in the other;

"(b) one offense consists only of a conspiracy or other form of preparation to commit the other;

"(c) inconsistent findings of fact are required to establish the commission of the offenses;

"(d) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

"(e) the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of such conduct constitute separate offenses." Section 95-1711(2), R.C.M.1947.

The crime of felony possession of marijuana of felony possession of amphetamines, so the former is not an offense included in the latter, nor is the latter an offense included in the former. Nor do subsections (b) through (e) limit the number of prosecutions or convictions in this case. Accordingly, we hold that where a defendant is in possession of more than one kind of prohibited drug at any one time, he may be prosecuted and convicted of a separate offense for each kind of prohibited drug he possesses.

Defendant's final specification of error concerns whether he was entitled to a direct verdict of acquittal at the close of the evidence. His argument is that the state charged him in one count

with possession of approximately 368.5 grams of marijuana and in the other count with possession of 15,785 amphetamine tablets and proved neither by admissible evidence.

At trial, defendant failed to object to a jury instruction to the effect that if the jury found that defendant possessed the prohibited drug, the amount thereof was immaterial except in the case of marijuana, where the state was required to prove that the amount possessed exceeded 60 grams to convict defendant of a felony. This is not only a correct statement of the law to which defendant could not validly object, but the propriety of this instruction was never raised in the trial court and cannot be raised for the first time on appeal. *State v. Murphy* (977), 174 Mont. 307, 570 P.2d 1103, 1105.

The evidence seized under the first, third and fourth searches amounted to approximately 313 grams of marijuana and 8,855 amphetamine tablets. This evidence was correctly admitted at trial under our prior holdings in this case. Even assuming, and we do not so decide, that the drugs found in the second search were inadmissible as contended by defendant, the state's proof was sufficient to support the crimes charged without it. There was no error in denial of defendant's motion for a direct verdict.

The conviction of defendant on both counts is affirmed.

MR. JUSTICES DALY and HARRISON, and M. JAMES SORTE, District Judge, sitting with the Court, concur.

MR. JUSTICE SHEA dissenting:

The majority decision will encourage policemen to search in many situtations where they would not have done so previously. If they search, without making an arrest, they may just luck out and find contraband or other evidence of illegal activity. On the other hand, if they search someone and find nothing, it is doubtful that the vast majority of those persons searched will ever complain to the authorities or take other action. The incidence of searches will increase dramatically.

I fail to see the compelling logic of *People v. Simon* (1955), 45

Cal.2d 645, 290 P.2d 531, 533, on which the majority relies. If an officer arrests before a search, and then finds nothing justifying the continued retention of the individual involved, he is just as free to release him as he would be if he searched first and then found nothing. In either event the individual is detained pending the outcome of the search. The defendant who is first searches is no more free to go than the person who is first arrested.

Moreover, there are compelling reasons to prohibit a search before an arrest. Article II, Section 4, 1972 Montana Constitution, Individual Dignity, provides in part: "The dignity of the human being is inviolable. * * *" Article II, Section 10, Right of Privacy, provides: "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling sate interest." Article II, Section 11, Searches and Seizures provides in part: "The people shall be secure in their persons, papaers, homes and effects from unreasonable searches and seizures. * * *"

The individual is provided no dignity when police are allowed to search him even before they arrest him. The well-being of a free society cannot be fostered by holding there is a compelling state interest in allowing a search to precede an arrest. No person can be secure in his person if any officer can search his person when he is not even under arrest.

It would appear also that the majority has unwittingly created a new cause of action—one of false search. Previously, for a false arrest, one had a cause of action if it turned out that there was no probable cause..Now one has a cause of action for false search it it turned out that there was no probable cause to justify the search. However, this new cause of action will provide little or no practical redress to the multitude who are searched and then sent on their way. I fear that those lowest on the totem pole of success in our society will be those who will be most often searched. That is why we should not allow it to happen.