THE STATE OF MONTANA EX REL. RALPH GLANTZ, JR., WILLIAM GERMER, LINDA MARIE PICKETT AND JACK YOUNG, Relators, v. THE DISTRICT COURT OF THE THIRTEENTH JUDICIAL DISTRICT OF THE STATE OF MONTANA IN AND FOR THE COUNTY OF YELLOWSTONE AND THE HONORABLE CHARLES B. SANDE, PRESIDING JUDGE.

No. 11740.
Submitted Sept. 22, 1969.
Decided Nov. 10, 1969.
461 P.2d 193.

134

· Sandall, Moses & Cavan, Charles F. Moses, Billings, argued, for relators.

Robert L. Woodahl, Atty. Gen., Helena, Charles C. Lovell, Special Asst. Atty. Gen., Great Falls, argued, John L. Adams, County Atty, Billings, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an original proceeding seeking an appropriate writ to compel the respondent district court to set aside its orders denying relator's pretrial motions. Four separate criminal proceedings are involved each concerning an information charging criminal possession of dangerous drugs. The district court denied the separate motions of relators to set aside and quash the information, to dismiss the information, to "quash the arrest", and to take the deposition of a certain police officer. Following ex parte presentation of the application, this Court entered its order to show cause directed to respondent court and upon the return day oral argument was had.

In this cause it appears that on or about July 10, 1969, application for a search warrant was made by Charles Hensley, detective of the Billings police department, reciting as grounds therefore the following:

"That an informant was searched by Detective Hensley of the Billings Police Department; That the automobile of the informant was also searched by Detective Hensley; Subsequent to this search Detective Hensley accompanied the informant in the informant's car to 1145 Custer Ave.; That Detective

Hensley left the car of the informant about 50 feet from the above address; That the informant drove into the driveway of the house at the above address, got out of his car and entered the house; That Detective Hensley observed the above take place from his vantage point 50 feet away; That Detective Hensley observed the informant come out of the house with a man named Jack Young; That the two of them were observed entering a garage attached to the house; That the officer believes that a sale of marijuana was made at this time and place. That the party taken into custody was found to be in possession of marijuana. Based on these facts it is believed and reasonably believed that marijuana and other dangerous drugs are on said premises.''

A search warrant was issued by the justice of the peace authorizing the search of ''1145 Custer Ave.—split level wood-frame house, attached garage and out buildings'' and directing seizure from said premises of ''Marijuana and narcotics and other dangerous drugs commonly known as LSD and Mescaline''.

The warrant was executed and all four relators were found on the premises at the time and were arrested. Upon leave granted by the district court, individual informations were filed against each relator. The affidavits of the deputy county attorney in support of the state's motion for leave to file recited that relator Glantz was lessee of the house searched and at the time of his arrest capsules believed to be mescaline were found on his person; that relator Young was living in said house and the search disclosed dangerous drugs in his room; that the relator Germer was living in said house and the search disclosed dangerous drugs in his room; that relator Pickett was found in said residence, was arrested and thereafter searched, a measurable quantity of marijuana was found on her person.

The only facts before this Court are those contained in the application for the search warrant, in the warrant itself, in the

allegations set forth in the affidavits mentioned above, and in the information.

The relators have attempted to raise many issues. These issues have been organized for purposes of discussion by this Court as follows: 1. Whether there was probable cause for issuance of the search warrant and, if so, whether the warrant authorized a lawful search of the described premises. 2. Whether there was probable cause for the arrest of each relator upon execution of the warrant. 3. Whether the district judge erred in finding probable cause by granting leave to file the informations. 4. Whether the statute, section 54-133, R.C.M.1947, states a crime and since the informations filed are couched in the language of the statute, whether they are defective.

Turning to issue No. 1, relators contend that probable cause did not exist for issuance of the search warrant and consequently the search conducted pursuant thereto was unlawful. Relators rely on Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The United States Supreme Court in Aguilar sets forth the test to be applied by a reviewing court for a determination of probable cause in these words:

"* * * when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a loss 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' * * * and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present * * *.'"

The Aguilar case involved a request for a search warrant which stated that the affiant had reasonable information from a credible informer to believe that narcotics were stored on certain premises. The court held this application to be insufficient stating that the magistrate should be provided with the under-

lying facts and whenever an informer's statements are relied upon as probable cause, there must be a demonstration of the reliability or credibility of the informer.

In Spinelli, supra, the warrant was issued upon a request stating that a reliable informant had told FBI officers that the defendant was conducting illegal gambling activities by running a race book at certain telephone numbers which actually belonged to the defendant. Again the court held that these were conclusions and the officer should set forth facts to the magistrate in order that the latter need not rely on rumor or upon the reputation of some unknown person.

The facts in Aguilar and Spinelli are distinguishable from the present case. Both of those cases involved affidavits based upon hearsay statements rather than personal observation. The court in Aguilar, supra, stated that an affidavit could well be based upon hearsay information and "need not reflect the direct personal observations of the affiant * * *."

In the instant case it is the personal observation and the fact the affidavit is based upon direct eyewitness evidence that distinguishes it from Aguilar and Spinelli. For example, the application recites that the affiant searched the informant and his automobile, accompanied the informant in his car to the house in question and left the car 50 feet from the house. The affiant observed that the informant came out of the house accompanied by Jack Young and both entered a garage. When the informant returned and was taken into custody, he was in possession of marijuana. Therefore the affiant stated that he personally believed a sale of marijuana was made on those premises and also had reason to believe more drugs could be found there. In addition, even if this were an informer case with hearsay evidence, a sufficient showing of circumstances was set forth as well as a demonstration of reliability and credibility of the informer, as tested by the personal observation of the affiant.

Relators also argue that the search warrant should have been issued only for a search of the garage. However, the affiant knew only that the drugs came from the premises, since he observed both persons leaving the house and entering the garage attached to the house.

In issue No. 2 the relators argue that probable cause did not exist for their arrest without a warrant. Section 95-608, R.C.M.1947, states:

"A peace officer may arrest a person when: * * * (d) He believes on reasonable grounds, that the person is committing an offense, or that the person has committed an offense and the existing circumstances require his immediate arrest."

In State v. Armstrong, 149 Mont. 470, 428 P.2d .611 (1967), this Court stated that probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a man in the belief that an offense has been or is being committed. (Citing Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, quoting from Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790). It should be noted here that there is a vast distinction in the probable cause for arrest without a warrant and cases involving sufficiency of evidence to convict. Cases cited by relators such as State v. Hood, 89 Mont. 432, 298 P. 354 (1931), and State v. Cooper, 78 Mont. 35, 252 P. 376, both deal with the sufficiency of evidence to convict.

The test then in this instance is whether, as the officers entered the premises under their warrant, they had reasonable grounds to believe that an offense had been or was being committed by each of the relators. There can be no question concerning probable cause as to Jack Young. The officer's affidavit sets forth an eye-witness account of what can be construed as a transfer of drugs from Young to the informer. The affidavit of the deputy county attorney recites that Young was living

in the house and the search of the premises made pursuant to the warrant disclosed dangerous drugs in Young's room.

Relator Glantz was the lessee of the premises where the drugs were found and he was present at the time. The record also discloses that relator Glantz was living in the house and present at the time the search warrant was executed and dangerous drugs were found in his room.

However, a different situation exists in the arrest of Linda Marie Pickett. She was on the premises at the time of the search but there was no allegation that any of the drugs on the premises belonged to her nor were there reasonable grounds to believe that she was committing a felony, as the subsequent search indicated, that would justify her immediate arrest without a warrant. She was taken to the police station and subsequently searched and it was there that a measurable quantity of marijuana was found on her person. There is ample authority for the proposition that the mere fact a person is on premises where officers have reason to believe there are drugs will not justify his arrest or a search of his person. People v. Soto, 144 Cal.App.2d 294, 301 P.2d 45; People v. Boyd, 173 Cal.App.2d 537, 343 P.2d 283; People v. Green, 152 Cal.App.2d 886, 313 P.2d 955. Mere presence in the place where a search is made *without further proof of probable cause* is insufficient to justify an arrest. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. The proceedings against relator Pickett should be dismissed since the probable cause for her arrest did not exist.

Issue No. 3 of relators is that the district court erred in granting leave to file the informations. Section 95-1301(a), R.C.M.1947, provides that application for the filing of the information may be made directly to the district court. The application must set forth such evidence as the judge may require in support and if it appears that there is probable cause to believe that an offense has been committed, the judge must grant leave to file. This Court is again confronted with the question of probable cause. The discussion above demonstrates

that the record clearly establishes sufficient evidence for the filing of informations except against relator Pickett.

In their final argument, issue No. 4, relators challenge the validity of section 54-133, R.C.M.1947. They contend that since the statute does not require knowledge and intent, the statute is vague and ambiguous and consequently unconstitutional. Because the informations allege the crime in the language of the statute, relators argue that the informations are also defective.

Section 54-133, R.C.M.1947, states:

"A person commits the offense of criminal possession of dangerous drugs if he possess any dangerous drug as defined in this act and does not come within the exceptions of section 3."

Relators apparently feel that the lack of definition within the act of the requirements for possession is fatal. However, the crime of possession of prohibited articles has traditionally carried with it the requirement that the possession be knowing and intentional. In State v. Hood, 89 Mont. 432, 436, 298 P. 354, 355, this Court said: "To justify a conviction of unlawful possession of a prohibited article, there must be proof of actual control and management of the thing prohibited". The meaning of the term "possession" has been so well defined by this Court and in other jurisdictions that it is hardly ambiguous, thus the lack of any specific definition does not detract from the clarity of the act in question.

The Uniform Narcotics Drug Act was adopted many years ago in 46 states and was repealed in Montana by the 1969 legislature. The Montana Dangerous Drug Act replaced it. The Uniform Act is mentioned here for one purpose—section 2 of that act provided that it shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug except as authorized by the act. In 91 A.L.R.2d 810, cases are cited which define the term "possession" for the purposes of the section mentioned above. The similarity between this section

of that act and the present act in Montana is obvious; knowledge of the alleged possessor or his intention to possess is not mentioned in either statute as an element of the offense prohibited. However, no case under the Uniform Act has been found where the defendant's conviction of illegal possession of narcotics has been sustained if the prosecution failed to prove, either directly or by inference, that the defendant had knowledge of the presence of the contraband substance. See Annot. 91 A.L.R.2d 810, 831 [85-91 A.L.R.2d LCS, p. 385]. In addition, no case has been found where the statute itself was held unconstitutional for failing to mention the requisite knowledge of the alleged possssor or his intention to possess.

The statute prohibiting the possession of dangerous drugs is a product of a century old but accelerating tendency to call into existence new duties and crimes which disregard any ingredient of intent in the language of the law itself. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1951). These are offenses of a regulatory nature. They do not fit neatly into any classifications of common-law offenses such as those against the state, the person or property. The original object of criminal law was to keep the peace and under strong church influence its function was extended to curb moral delinquencies. For these purposes it developed a suitable procedure, requiring proof of moral blame-worthiness or a criminal intent. But today the crowded conditions of life require social regulation to a degree never before attempted. The increased evil from dangerous drugs due to the complex conditions of modern life is just one area requiring new forms of regulation. With new drugs being discovered and introduced at an unprecedented rate, in addition to the existing drugs which have proven injurious to society, the people through their legislatures have demanded regulations upon their use. Section 53-133, R.C.M.1947, is the kind of statute where evidence of the offender's specific intent would be difficult if not impossible to obtain and adequate enforcement of the law would be prevented if proof of this element

was required. This Court does not mean to imply, however, that the state is relieved of the burden of showing that defendant knew the prohibited substance was in his possession. Such knowledge can be proved by evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that he knew of the existence of the prohibited substance at the place where it was found. People v. Nettles, 23 Ill.2d 306, 178 N.E.2d 361, cert. den. 369 U.S. 853, 82 S.Ct. 939, 8 L.Ed.2d 12; People v. Mack, 12 Ill.2d 151, 145 N.E.2d 609; People v. Smith, 20 Ill.2d 345, 169 N.E.2d 777.

■ Finally, since the informations in question allege the violations in the language of the statute which this Court holds valid and the informations follow the requirement set forth in section 95-1301, R.C.M.1947, they are not defective nor insufficient in any manner.

■ Relators have attempted to raise constitutionality issues challenging the validity of the entire Montana Dangerous Drug Act. They attack section 2 of the act contending the Board of Pharmacy has been granted an unconstitutional delegation of power by the legislature. Relators also challenge the validity of section 9 of the act, which provides for rehabilitation treatment of habitual users in lieu of imprisonment. However, the relators have no standing to raise these issues; neither section affects or is applicable to relators in this action. The State Board of Pharmacy is not a party to this proceeding nor is there any complaint before this Court concerning a rule or regulation of the Board. See State v. Andre, 101 Mont. 366, 54 P.2d 566. There is no reason to consider the constitutionality of these sections in this case.

■ Relators also contend that use of an informant constitutes entrapment. Entrapment is a matter of defense which has never even been presented to the district court in the instant case. The factual circumstances have not been developed to the point where one could suggest that entrapment is present. There-

fore, relators are premature and speculative in raising this question.

An additional matter raised by relators concerns the denial of their motion to take the deposition of Officer Hensley. The officer can be subpoenaed to testify at a hearing in support of a motion to suppress or other pretrial motion if necessary. Depositions are for the purpose of perpetuating testimony and the district court no doubt believed that if the officer was to be examined in support of any pending motion he should be cited into open court to testify, not deposed. This opportunity is still open to relators and no prejudice has been shown by the denial of their motion at this early stage in the proceeding.

The law and proceedings of the district court are sustained as to all relators except Linda Marie Pickett and the petition for an appropriate writ is denied in all particulars except as to her. As to Linda Marie Pickett, it is hereby ordered that the cause be returned to the district court with instructions to dismiss the criminal charge pending against her in that court.

MR. JUSTICES JOHN C. HARRISON, and HASWELL, and the Honorable Philip Duncan, District Judge, sitting in place of MR. JUSTICE CASTLES, who deemed himself disqualified, and The Honorable Bernard Thomas, District Judge, sitting in place of MR. JUSTICE BONNER, concur.