No. 13595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ALBERT F. LENON,

Defendant and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial
District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Hash, Jellison & O'Brien, Kalispell, Montana
James Bartlett argued, Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Mayo Ashley argued, Assistant Attorney General,
Helena, Montana
Patrick Springer, County Attorney, Kalispell,
Montana

---

Submitted:  September 21, 1977

Decided OCT 26 1977

Filed OCT 26 1977

Thomas J. Kearney
_____ Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Defendant appeals from a conviction of possession of dangerous drugs.

The state charged defendant in district court, Flathead County, with the offense of felony possession of dangerous drugs. On January 28, 1976, Honorable Robert C. Sykes, after a hearing, denied defendant's motion to suppress his confession. On April 20, 1976, defendant was found guilty of this offense at a jury trial. On June 2, 1976, the court entered judgment, sentenced defendant to five years imprisonment, and then suspended the sentence. On June 21, 1976, the court denied defendant's alternative motions for acquittal or for a new trial.

The facts brought out at the trial which are relevant to this appeal are as follows: On June 11, 1975, Kalispell police officers obtained a warrant to search a Kalispell house. The officers executed the warrant shortly before midnight on Friday, June 13, 1975. As they approached the house, they observed an individual, 8 to 10 feet in front of them, approaching the house on the front walk. The officers, fearing that the individual would alert the occupants of the house as to the imminent search, pursued the individual into the house. Policeman Donald Hossack testified that, from the light in the house foyer, he could identify the individual by his height, type and color of shirt, hair color and length, build and type of jeans. The individual had a bundle or bag under his arm, and silhouetted in the house light, it appeared to be a brown paper bag.

The officers entered the house four to six seconds after the individual did. Upon their entry, the officers came face-to-face with defendant, who matched the appearance of the individual they saw enter the house with the bag or bundle. Directly behind defendant, about three or four steps up the stairway,

was a brown paper bag. The officers in their search, seized various drug paraphernalia and marijuana in the upstairs rooms. The brown paper bag directly behind defendant contained 16 "lids" of marijuana, weighing approximately one ounce per lid. The police officers wrote an inventory of the items seized, which they left at the house, and returned the search warrant and an inventory of the seized items to the court. The police officers, however, failed to make a return of the brown paper bag of marijuana to the court which issued the search warrant.

The officers then arrested defendant and the two people who were the subjects of the search warrant. Defendant and the two other arrestees were read their Miranda rights and then transported to the Kalispell City jail for booking purposes. At the police station the officers gave defendant a form printed with the Miranda warnings. Defendant signed that form. The Booking procedure was completed sometime between 2:30 and 3:00 a.m. on Saturday, June 14, 1975, at the Flathead County jail.

Shortly before 9:00 a.m. on Saturday, June 14, 1975, Officer Hossack met in the jail with defendant. The officer did not remember whether he gave defendant a verbal Miranda warning at their 9:00 a.m. meeting, although he has a notation in his records saying that he did. The officer gave defendant a "voluntary statement" form with a Miranda-like warning printed at the top. Defendant then, in his own handwriting, wrote that he had taken a sack containing marijuana into the house on the night he was arrested. No lawyer was present at the confession.

Officer Hossack testified that he did not know if in fact defendant knew he did not have to make a statement, did not know whether defendant knew he could have a lawyer present, and did not know whether defendant knew his statement could be used against him in a court of law. The officer did state, though,

- 3 -

that he read defendant the top part of the "voluntary statement" form which listed defendant's right to an attorney and his right to remain silent.

Officer Hossack, who had been a "friendly acquaintance" of defendant for ten to fifteen years, assured defendant that he would bring him before a judge and get him admitted to bail as soon as possible. The justice of the peace was out of town and defendant did not have his initial appearance until the morning of Monday, June 16, 1975. The officer testified that " * * * for my own clarification and for a better case * * *" he thought he told defendant to add in a statement that the sack was brown colored. Defendant did write this into the confession and signed it at the bottom.

Defendant raises the following issues on appeal:

1. Did the police have probable cause to arrest defendant?

2. Did the "then existing circumstances" require defendant's immediate arrest, as contemplated in section 95-608(d), R.C.M. 1947?

3. Was defendant's confession voluntarily given?

4. Did the officers' failure to present defendant before a magistrate before interrogation render the confession inadmissible?

5. Did Officer Hossack's statement at trial that he was looking specifically for the brown paper bag before he went into the house constitute reversible error?

6. Did the police officers' failure to make a return of the brown paper bag of marijuana, render the seized evidence inadmissible under section 95-712, R.C.M. 1947?

Defendant states that "good faith and mere suspicion" by policemen as to a suspect's commission of an offense is

insufficient to establish probable cause to arrest. The mere fact that a defendant is on the premises where the policemen have reason to believe there are drugs will not justify an arrest. State ex rel. Glantz v. District Court, 154 Mont. 132, 461 P.2d 193 (1969). There must be a showing of some connection with illegal or criminal activity by a defendant on the premises before there is probable cause to arrest him. State v. Hull, 158 Mont. 6, 487 P.2d 1314 (1971).

Defendant argues that there were insufficient facts to connect him with the brown paper bag of marijuana at the time of the arrest. At most, the facts gathered by the peace officers at the moment of arrest, gave reason for them to be suspicious of the defendant.

Defendant is indubitably correct in his assertion that "mere suspicion" is not the equivalent of probable cause to arrest. State v. Lahr, ____Mont.____, 560 P.2d 527, 34 St.Rep. 90 (1977). A peace officer may legally arrest a person without a warrant, however, when he "believes on reasonable grounds that the person is committing an offense * * *". Section 95-608(d), R.C.M. 1947. The "reasonable grounds" requirement of section 95-608(d) is synonymous with "probable cause". State v. Fetters & Lean, 165 Mont. 117, 526 P.2d 122 (1974). "Probable cause to arrest without a warrant exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." State v. Hill, ____Mont.____, 550 P.2d 390, 33 St. Rep. 496 (1976).

Defendant matched the physical appearance as to clothing, statute, build and hairstyle of the individual that the officers saw enter the house immediately before them; the individual

who entered the house carried a brown sack; the officers confronted defendant immediately upon entering the house; the officers discovered a brown paper bag full of marijuana on the steps directly behind defendant.  In this case the "facts and circumstances within the [officers'] knowledge" could reasonably have led them to no other belief than that defendant was committing the offense of possession of dangerous drugs.

Defendant next contends that, because the police officers knew defendant to be a reputable Flathead County businessman with no prior criminal record, the existing circumstances did not require his immediate arrest.  Section 95-608(d), R.C.M. 1947, allows a warrantless arrest only when the officer reasonably believes the suspect is committing an offense or " * * * that the person has committed an offense and the existing circumstances require his immediate arrest."  Defendant claims that the police thus had the statutory duty to present facts establishing probable cause to a neutral magistrate who could then judge the sufficiency of the probable cause to arrest.

Defendant's reasoning on this point is specious.  Section 95-608(d) provides for two distinct situations.  Where an officer reasonably believes that a person had in the past committed an offense, he may arrest the suspect without a warrant only where the existing circumstances require his immediate arrest.  Where, however, the peace officer reasonably believes that an individual is presently committing an offense, he may arrest that person at that time, whether or not the existing circumstances require the arrest.  Defendant herein was charged with the offense of possession of dangerous drugs, and at the moment of his arrest the officers could reasonably believe that defendant was committing that possessory offense by virtue of his similarity in appearance to the person they had just seen

- 6 -

enter the house with the brown bag, and due to the fact that the brown bag of marijuana was directly behind defendant on the stairs. See People v. Berry, 17 Ill.2d 247, 161 N.E.2d 315 (1959), overruled in part on other grnds.; People v. Watkins, 19 Ill.2d 11, 166 N.E.2d 433 (1960).

If a defendant's confession is involuntary, it violates his Fifth and Fourteenth Amendment privilege against self-incrimination and may not be used as evidence at his criminal trial without violating his Fourteenth Amendment right to due process of law. Brown v. Mississippi, 297 U.S. 278, 80 L Ed 682, 56 S.Ct. 461 (1936). Voluntariness is the underlying test of admissibility of statements, admissions or confessions. Brown v. Illinois, 422 U.S. 590, 45 L Ed 2d 416, 95 S.Ct. 2254 (1975); State v. Zachmeier, 151 Mont. 256, 441 P.2d 737 (1968). The question of voluntariness largely depends upon the facts of each case, no single fact being dispositive. Brown v. Illinois, 45 L Ed 2d at 427; State v. Chappel, 149 Mont. 114, 423 P.2d 47 (1967). The determination of voluntariness, rather, depends upon the "totality of circumstances". Clewis v. Texas, 386 U.S. 707, 18 L Ed 2d 423, 87 S.Ct. 1338 (1967).

The trial judge, at the January 28, 1975 hearing on defendant's motion to suppress, determined that defendant had voluntarily given his written confession to the offense of possession of dangerous drugs. The issue of the voluntariness of a confession is largely a factual determination, addressed to the discretion of the trial court. State v. White, 146 Mont. 226, 405 P.2d 761 (1965), cert. den. 384 U.S. 1023, 16 L Ed 2d 1026, 86 S.Ct. 1955 (1966). The trial court's judgment as to voluntariness of a confession will not be reversed on appeal unless it is clearly against the weight of the evidence. State v. Smith, 164 Mont. 334, 523 P.2d 1395 (1974); State v. Rossell, 113 Mont.

457, 127 P.2d 379 (1942).

Defendant argues that several factors created a "totality of circumstances" under which his confession was involuntary. Defendant asserts that because Officer Hossack testified that he may have instructed defendant to add to his confession the statement that the sack (which he had previously admitted having carried into the house) was a grocery sack of brown color, the confession was derived from the officer's and not from defendant's thought processes. Defendant maintains that he confessed due to hope of leniency through subservience to the directions of the police officer, and that the officer had incorrectly informed him that the other two suspects arrested on the night of the search had already confessed. Finally, defendant points out that the interrogating officer testified that he did not remember whether he orally read defendant his Miranda rights on the morning of the confession and did not know whether defendant understood his rights.

We cannot overemphasize our strong condemnation of police practices wherein an officer instructs a suspect to add certain words to his confession "for a better case" or wherein a police officer misinforms a defendant as to other arrestees having given confessions, as is alleged here. We cannot, however, upon a review of the entire record, state that the totality of the circumstances was such as to overbear defendant's will and create "' * * * any fair risk of a false confession?'" State v. Robuck, 126 Mont. 302, 308, 248 P.2d 817 (1952), citing from State v. Sherman, 35 Mont. 512, 90 P. 981, 119 Am.St.Rep. 869.

The evidence at trial indicated that there was an atmosphere of cordiality between defendant and Officer Hossack at the time of interrogation. This is in marked contrast to the physical brutality in Brown v. Mississippi, 297 U.S. 278, 80 L Ed 2d 682, 56 S.Ct. 461 (1936) or the mental coercion in Payne v. Arkansas, 356 U.S. 560, 2 L Ed 2d 975, 78 S.Ct. 844 (1958) which led to

forced, involuntary, and therefore, inadmissible confessions. Rather than making threats, the officer in this case merely asked defendant if he would make a statement. The officer testified that he made no promises contingent upon defendant's giving a confession, and defendant, who chose not to take the stand, presented no evidence to rebut the officer's assertion.

Nor was there any other evidence of coercion in this case. Defendant is an adult male and successful businessman who presumably could well comprehend the import of his actions. The police did not subject defendant to the "third degree". Rather, the interrogation began at 9:00 a.m. and defendant wrote and signed his confession by 9:10 a.m. The officer's suggestion that defendant add the sentence that the sack he carried into the house "was a grocery sack of brown color" is not, under the facts of this case, sufficient to show that the confession was involuntary. In the absence of coercive circumstances, the key is whether a defendant voluntarily sees the facts as the officer reflects them. See United States v. Del Porte, 357 F.Supp. 969 (S.D. N.Y. 1973), aff'd sub nom., United States v. St. Jean, 483 F.2d 1399 (2nd Cir. 1973). In this case, defendant in his confession had already admitted that he had carried a sack containing marijuana into the house. The additional sentence, written at the officer's suggestion, merely described the color of that sack.

Despite the voluntary character of defendant's confession under traditional principles, defendant's confession would have to be excluded if the requirements of Miranda v. Arizona, 384 U.S. 436, 16 L Ed 2d 694, 86 S.Ct. 1602 (1966) were not met by the police officers. Under Miranda, a defendant, prior to in-custody interrogation, must be apprised that he has the right to remain silent; that anything he does say may be used as evidence against

him in a court of law; that he has the right to consult a lawyer and have the lawyer present with him during interrogation; and that, if he is indigent, he may obtain court appointed counsel. In interpreting Miranda, the Supreme Court has stated that:

> " * * * unless law enforcement officers give certain specified warnings before questioning a person in custody, * * * any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary. See Michigan v. Tucker, 417 U.S. 433, 41 L Ed 2d 182, 94 S.Ct. 2357." Michigan v. Mosley, 423 U.S. 96, 46 L Ed 2d 313, 319, 96 S.Ct. 321 (1975).

See also, Doyle v. Ohio, 426 U.S. 610, 49 L Ed 2d 91, 96 S.Ct. 2240 (1976).

Defendant states that Officer Hossack's statement at trial that he did not remember whether he gave defendant a verbal Miranda warning on the morning of defendant's confession, should alone vitiate the confession. Defendant also points to the officer's testimony that he did not know whether defendant in fact appreciated all his rights. Defendant's contention is without merit.

The police verbally advised defendant of his Miranda rights at the time of defendant's arrest. When the police transported defendant to the police station, they again gave defendant his Miranda warning, this time on a printed form which defendant signed. Finally, defendant wrote his confession on a form upon which the Miranda warning was printed. Defendant does not claim that either of the two Miranda warnings given to him on the night of his arrest were in any way insufficient. He merely claims that the confession should be suppressed because the interrogating officer failed to couple the written warning with a verbal warning the next morning when defendant confessed.

In this case, the time between the first verbal _Miranda_ warning and the confession was less than nine hours. Such a brief time lapse between the verbal warning and the confession did not by itself, under the facts of this case, create a duty to verbally repeat those warnings. United States v. Hopkins, 433 F.2d 1041, (5th Cir. 1970) cert.den., 401 U.S. 1013, 28 L Ed 2d 550, 91 S. Ct. 1252 (1971). Rather, defendant gave every indication that he understood his rights when he told Officer Hossack on the morning of the confession that he did not want to call a lawyer. Under the "totality of the circumstances", defendant understood his rights, confessed voluntarily, and there was no need to repeat the _Miranda_ warning. See, Comment, _The Need to Repeat Miranda Warnings at Subsequent Interrogations_, 12 Washburn L.J. 222 (1973). The issue in this case is whether defendant in fact understood his rights, and not, as defendant claims, whether the interrogating police officer thought that defendant understood his rights. The ultimate responsibility for resolving this issue lies not with the interrogating officer, but with the courts. _Miranda_, 16 L Ed 2d at 730, n. 55. We find that the requirements of _Miranda_ were met, that defendant voluntarily confessed and that the trial judge properly admitted the written confession into evidence at trial.

Defendant also claims that his confession should have been suppressed because of what he asserts was "unnecessary delay" between the time he was arrested and the time he was brought before a judge for his initial appearance.

Section 95-901(b), R.C.M. 1947, provides:

> "Any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest or most accessible judge in the same county and a complaint, stating the charges against the arrested person, shall be filed forthwith."

Defendant was arrested sometime around midnight, Friday,

June 13, 1975, confessed at 9:00 a.m., Saturday, June 14, 1975, and was brought for his initial appearance on Monday morning, June 16, 1975. Officer Hossack testified that he tried several times to telephone the justice of the peace before he learned that the justice was out of town for the weekend.

We disapprove of the police procedure used in this case. In addition to the justice of the peace before whom defendant was brought, Flathead County has one other justice of the peace and the eleventh judicial district of which Flathead County is a part, has two district court judges. The testifying officer failed to show that the police tried to contact any of these judges to arrange an initial appearance. In the proper case, unexcused delay might lead to protracted confinement of a defendant, contribute to prompting a confession, and warrant the suppression of the confession. This, however, is not such a case.

Defendant failed to prove that his failure to be presented before a magistrate until the Monday morning after his Friday night arrest constituted "unnecessary delay", since the justice of the peace was out of town until Monday, and there was no evidence that there was any other judge available in the county over the weekend. See State v. Benbo, ____Mont.____, ____P.2d____, No. 13491 (Mont. filed October 26, 1977.).

Defendant's fifth contention of error is that, because Officer Hossack testified at the suppression hearing that he had no prior knowledge of the contents of the brown paper bag, it was reversible error for him to testify at trial that he was specifically looking for the brown paper bag before he entered the house to execute the search warrant.

It is difficult to ascertain the inconsistency between Officer Hossack's statement at the suppression hearing and his testimony at trial. Although it is true that he did not know the

- 12 -

contents of the bag at the time the individual carried it into the house, the officer certainly could still be looking for the bag as he entered so that he could check its contents.

Furthermore, defendant showed no prejudice from the statement and failed to object to the statement at trial. Objections first raised on appeal will not be considered by this Court. State v. Armstrong, ___Mont.___, 562 P.2d 1129, 34 St.Rep. 213 (1977); State v. Braden, 163 Mont. 124, 515 P.2d 692 (1973).

Section 95-712, R.C.M. 1947, requires police officers to make a return of the search warrant and all things seized to the judge who issued the warrant. In this case, the police returned the warrant and an inventory of the items seized to the judge. The "things seized" however, were not returned. Defendant asserts that the failure of the officers to make a return to the judge of the brown paper bag of marijuana per se rendered that item inadmissible as evidence at trial.

The Illinois Supreme Court, in interpreting its return of seized evidence statute, the section from which 95-717 was taken has stated that " * * * failure to comply with statutory requirements concerning the steps to be taken after the warrant has been served does not render the search warrant or the search conducted pursuant thereto invalid * * *." People v. Hawthorne, 45 Ill.2d 176, 258 N.E.2d 319, 322 (1970), cert. den., 400 U.S. 878, 27 L Ed 2d 115, 91 S.Ct. 119 (1970). Defendant has the burden of affirmatively showing that an irregularity in the search and seizure affected his substantial rights. Section 95-717, R.C.M. 1947; State v. Watkins, 156 Mont. 456, 481 P.2d 689 (1971). Defendant in this instance failed to demonstrate any prejudice to his substantial rights by the officers' failure to make a return of the brown paper bag of marijuana.

The judgment of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 14 -