No. 14677

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

EDWIN GRANT HAMILTON,

Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

)   For Appellant:

D. Frank Kampfe argued, Red Lodge, Montana
Sally Johnson argued, Red Lodge, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Sheri Sprigg argued, Assistant Attorney General, Helena,
 Montana
Pablo Perhacs, County Attorney, Red Lodge, Montana
Arthur Ayers argued, Red Lodge, Montana

Submitted:  June 5, 1979

Decided: JAN 17 1980

Filed:

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Edwin Grant Hamilton appeals from his conviction by a jury in Carbon County of the crime of mitigated deliberate homicide. This Court heard oral argument upon the matter on June 5, 1979. On June 18, 1979, the United States Supreme Court decided the case of Sandstrom v. Montana (1979), 442 U.S.____, 99 S.Ct. 2450, 61 L Ed 2d 39. The Sandstrom case was decided before this Court had decided the present case. Upon our review of the record in the present case we determined that further argument was necessary in light of the Sandstrom case, because neither party addressed this issue in the original hearing. Additional briefs were filed by the parties and oral argument was again presented to this Court on October 29, 1979. This second hearing was limited solely to the Sandstrom issue. The following decision disposes of the issues raised in both the October and June hearings.

At 6:26 p.m. on the evening of February 12, 1978, the weekend dispatcher for the Carbon County sheriff and Red Lodge police departments answered a telephone call. Her greeting "This is the Red Lodge Police Department" received no response. Rather, she overheard what sounded to her "like a couple of drunks arguing." She stated to a police officer standing nearby that "this sounds like we have got a fight." She then heard a male voice say "You tried to call the goddamn cops on me." The dispatcher then turned the phone over to the officer.

For approximately the next half hour, the police officer listened through the phone to the events occurring at the source of the call. He heard what sounded like a struggle between a male and female. There was scuffling and a female voice calling for help. After hearing what sounded like the female gasping for air and choking, the officer began to write down the intelligible

- 2 -

words and sentences he could make out. He recorded the following phrases spoken at intervals by the male voice:

> "Goddamnit, die. I am going to hell. Mamma,
> I am sorry. You all right, Mamma, huh? No,
> no, no, Mamma. I love you. Mamma, Mamma,
> Mamma. Like hell I am. I have never done this
> in my life. Now I have got to find my glasses.
> Mamma, Mamma. Die, you bitch. Goddamnit, die.
> Are you going to die or not? Die, damnit. I
> am going to hell, Mamma."

As the officer continued listening, he heard what he thought was someone dialing the telephone on the other end of the line. The male voice then spoke into the receiver: "Hang the goddamn phone up, I have to call my cousin. My mother is dead. She had a heart attack." The officer inquired as to the party's name and address. The individual identified himself as Grant Hamilton of 207-1/2 North Platt, a location only a block away from the police station.

When a sheriff's deputy who had been advised of the location arrived there minutes later, he found defendant, 54 year old Edwin Grant Hamilton, with bruises and scratches on his face and a trickle of blood from a wound on the top of his head. Lying face down on the floor near the doorway between the living room and a bedroom was the body of Mabel Johnson, defendant's 75 year old mother with whom he shared the premises. She had been manually strangled to death.

Shortly thereafter, the police officer who had been listening on the phone arrived at the scene, and a few minutes later the Carbon County sheriff also arrived. The sheriff placed defendant under arrest and took him into custody. The police officer and deputy sheriff then proceeded to take photographs of the interior of the house and gather physical evidence. The officers had no search warrant and had not asked defendant's permission to search the premises.

On February 16, 1978, an application for leave to file information was filed by the county attorney of Carbon County, alleging that defendant had committed the crime of deliberate homicide. Counsel for defendant objected that the affidavit accompanying the application failed to set forth probable cause, but the objection was overruled. On September 11, 1978, defendant was brought to trial. After the presentation of evidence instructions were given; one of the instructions given to the jury read as follows: "The law presumes that a person intends the ordinary consequences of his voluntary acts." This instruction was objected to by defense counsel. The jury returned a verdict of guilty of mitigated deliberate homicide. Defendant was sentenced to 35 years in Montana State Prison.

The defendant specifies six errors:

(1) Whether defendant was the victim of an illegal arrest?

(2) Whether the affidavit in support of the application for leave to file information was sufficient to establish probable cause?

(3) Whether the District Court erred in denying defendant's motion in limine to exclude evidence regarding the telephone call to the Carbon County sheriff's office?

(4) Whether the District Court committed reversible error in refusing to give defendant's offered instructions on negligent homicide as a lesser included offense?

(5) Whether the District Court committed reversible error in refusing to give defendant's proposed self-defense instruction?

(6) Whether the District Court committed reversible error in giving the instruction, "The law presumes that a person intends the ordinary consequences of his voluntary acts."

We hold that the arrest was lawful and, consequently, the

- 4 -

items of evidence garnered within the limits of the search incident to arrest were properly admitted.

Section 46-6-401(4), MCA, provides that a peace officer may arrest a person without an arrest warrant when "he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest."

"Reasonable grounds" as used in this statute is synonymous with "probable cause". State v. Fetters (1974), 165 Mont. 117, 122, 526 P.2d 122. "Probable cause to arrest without a warrant exists where the facts and circumstances <u>within the officer's knowledge and of which he had reasonably trustworthy information</u> are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." State v. Hill (1976), 170 Mont. 71, 74, 550 P.2d 390, 392.

"Evidence required to establish guilt is not necessary to prove probable cause." <u>Fetters</u>, 165 Mont. at 122. However, the mere fact that a defendant is present at the scene of a crime does not justify his arrest. State ex rel. Glantz v. District Court (1969), 154 Mont. 132, 139, 461 P.2d 193, 197. "There must be a showing of some connection with illegal or criminal activity by a defendant on the premises before there is probable cause to arrest him." State v. Lenon (1977), ____Mont.____, 570 P.2d 1901, 34 St.Rep. 1153, 1156, citing State v. Hull (1971), 158 Mont. 6, 487 P.2d 1314.

"Where an officer reasonably believes that a person had in the past committed an offense, he may arrest the suspect without a warrant only where the existing circumstances require his immediate arrest. Where, however the peace officer reasonably believes that an individual is presently committing an offense, he may arrest that person at that time, whether or not the existing

- 5 -

circumstances require his immediate arrest." Lenon, supra. 34 St.Rep. at 1153.

The foregoing authorities are the controlling case law in Montana on this issue. The defendant argues that his mere presence at the scene of the crime is not sufficient probable cause to justify the arrest. This is a correct statement of the law. State ex rel. Glantz, supra. The facts of this case, however, present more than "mere presence" at the scene of the crime. The police officers knew of the events overheard on the phone. The defendant was present with the corpse at the source of the call. The police arrived at the scene of the crime within minutes after the events were heard on the phone. The scratches on the defendant's face indicated that he had recently been involved in a fight. These events sufficiently constitute probable cause to arrest the defendant.

The language cited above from Lenon indicate that a warrantless arrest must be made only when the crime was committed in the officer's presence or that there are existing circumstances which require his immediate arrest. (Section 46-6-401, MCA, outlines other circumstances where a warrantless arrest may be made, but those circumstances are not presented in this case.) As a result, we are presented with a problem concerning the time element in the present case.

Defendant argues that the commission of the offense was in the past by the time the arrest was made and that the existing circumstances did not require defendant's immediate arrest because he "was not going anywhere and there was ample time in which to secure a warrant without losing any evidence or risking any personal danger to law enforcement officers." However, "knowledge of the commission of an offense in an officer's presence may be gained by him through a mechanical apparatus" and an

offense is "deemed committed in the presence of the officer" so as to justify arrest without a warrant "when he hears the disturbance and proceeds at once to the scene." 6A C.J.S. Arrest §18. Even in the case of a misdemeanor, under statutes allowing warrantless arrest for offenses committed in the officer's presence, such an arrest after the offense is completed is proper if made within a reasonable time or upon fresh and immediate pursuit. 5 Am Jur 2d, Arrest §33. It has been held that the right to make warrantless arrests is broader in felony cases than in misdemeanor cases. Chaney v. State (1975), 133 Ga.App. 913, 213 S.E.2d 68.

Defendant's attempt to invalidate his arrest on the basis of this time argument must fail. What the officer overheard on the telephone led him to reasonably believe that the defendant was presently committing an offense. The warrantless arrest pursuant to that belief minutes later was proper regardless of whether or not the existing circumstances required immediate arrest. The arrest being lawful, the items of evidence acquired pursuant to that arrest were properly admitted at trial.

The defendant contends that the affidavit in support of application for leave to file information was insufficient. Section 46-11-201(1), MCA, provides:

> "The county attorney may apply directly to the district court for permission to file an information against a named defendant. The application must be by affidavit supported by such evidence as the judge may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant the judge shall grant leave to file the information, otherwise the application shall be denied."

The Revised Commission Comment states, in pertinent part:

> "Obtaining leave to file an information is not a mere perfunctory matter, but rests in the sound discretion of the district judge. The application must be complete in itself, and contain such salient facts as will allow the district judge to make an independent determination that an offense has been committed. It is impossible to delineate here

- 7 -

what facts would be necessary for all cases; however, a recitation of the fact the defendant had been arrested, that he was accused of a crime, and that there is good evidence (e.g. eyewitnesses) implicating him with the crime would seem sufficient."

The foregoing statute and commission comment supply the test by which we measure whether an affidavit is sufficient to make possible an independent determination of probable cause by the District Court. State ex rel. Murphy v. McKinnon (1976), 171 Mont. 120, 556 P.2d 906. "Examination of the record reveals no supporting evidence other than the amended affidavit [was required by the judge under §46-11-201(1), MCA]. Thus, in determining whether probable cause existed this Court is confined to the contents of the amended affidavit." Murphy, 171 Mont. at 124.

The defendant points to the fact that certain statements used in the affidavit were later suppressed on defendant's motion. It is contended by the defendant that without those statements the affidavit is insufficient. We do not agree.

The affidavit with the offending portions excised, reads:

"ARTHUR W. AYERS, JR., being first duly sworn, upon oath, deposes and says:

"That he is the duly elected, qualified and acting County Attorney of Carbon County, Montana; that on February 12, 1978, at approximately 6:26 P.M. a telephone call was received by the dispatcher at the Carbon County Sheriff's office; that the dispatcher heard a disturbance on the other end of the telephone line and handed the telephone to Red Lodge City Police Officer Craig Christie; that Officer Christie heard a male voice at the other end of the telephone line state: 'Mamma, Mamma, die you bitch, God damnit die, are you going to die or not, die damnit, I'm going to hell'; that a male person at the other end of the telephone line then attempted to use the telephone and Officer Christie inquired as to the person's name and the address and was advised 'Grant Hamilton' and '207-1/2 North Platt'; that Carbon County Deputy Sheriff Bert J. Obert and Officer Christie then proceeded to 207-1/2 North Platt in the city of Red Lodge and discovered the defendant Edwin Grant Hamilton at such residence together with Mabel Johnson who appeared to said officers to be deceased; that at 7:35 P.M. Mabel Johnson was pronounced dead by a physician at her said residence 207-1/2 North Platt, Red Lodge,

- 8 -

Montana, which residence was shared by her son, the defendant Edwin Grant Hamilton and no others; that the cause of death of Mabel Johnson has been pathologically determined to be manual strangulation; . . . and that there is therefore probable cause to believe that on or about February 12, 1978, in the City of Red Lodge, County of Carbon, State of Montana, Edwin Grant Hamilton then and there purposely or knowingly caused the death of Mabel Johnson by strangling."

A prima facie showing that defendant committed an offense is not necessary in an affidavit in support of leave to file; a mere probability is sufficient for probable cause. State v. Miner (1976), 169 Mont. 260, 546 P.2d 252. "[J]udges reviewing such affidavits should use their common sense in determining whether probable cause exists." Miner, 169 Mont. at 264, 546 P.2d at 255.

Defendant here argues that the affidavit is deficient because "there is no contention that other persons did not have access to the house wherein the deceased was found dead" and because the affidavit gives no reason "to believe that the appellant did not leave the premises during the day or that any other persons did not visit the residence" on the day of the crime. Defendant can cite no authority that the absence of these allegations is fatal. As with the illegal arrest issue, defendant's contentions here ignore the fact that evidence to establish probable cause need not be as complete as evidence to establish guilt. A common sense reading of the affidavit, even with the matters deleted to which defendant objected, indicates that the statutory and decisional guidelines were more than adequately met by the affidavit.

The defendant contends that evidence of the telephone call received by the Red Lodge Police Department on the night in question was inadmissible because there was no proper authentication or identification as a condition precedent to admissibility. The defendant argues that there is no inherent reliability to the evidence that the speaker who identified himself over the phone to the police officer as Grant Hamilton was in fact the

- 9 -

defendant. Rule 901, Mont.R.Evid., provides in pertinent part:

> "(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> "(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> " . . .
>
> "(6) Telephone conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone."

As a general rule, "[a]uthenticity for admissibility can be demonstrated by direct or circumstantial evidence and the sufficiency of evidence for a foundation is within the discretion of the trial judge." State v. Cooper (1972), 161 Mont. 85, 92, 504 P.2d 978. Specifically regarding telephone calls, "many criminal cases have held or recognized that a mere statement of his identity by the caller on the telephone is not sufficient proof of such identity," but on the other hand a huge number of cases take the position that "the identity of a participant in a telephone conversation may be established by circumstantial evidence." Annot. 79 ALR3d 79, §§19, 20.

A similar issue was presented in Churchill v. State (Tex.Crim.App. 1958), 317 S.W.2d 541. In Churchill, the testimony of a deputy sheriff that he had a telephone conversation with a person who gave his name as defendant, who reported a shooting and instructed officers to meet him at a certain place, the scene of the shooting, was admissible in evidence when further testimony showed that deputies were immediately dispatched to the scene and found defendant there. The fact that the deputy

was not familiar with the defendant's voice went to the weight rather than to the admissibility of the testimony.

Where the recipient of a call is not familiar with the caller's voice, "[c]orroboration of a statement of identity by the caller sufficient to render the conversation admissible against him may be supplied by the evidence (1) that the subject matter of the call revealed that only the named party would likely have knowledge of those conversational facts; or (2) of other confirming circumstances which make it probable that the named person was, in fact, the speaker." [Citations omitted.] State v. Marlar (1972), 94 Idaho 803, 498 P.2d 1276, 1277.

Circumstances preceding or following a telephone conversation may serve to sufficiently identify the caller so as to render telephone communication admissible. State v. Williamson (1972), 210 Kan. 501, 502 P.2d 777. "The completeness of the identification goes to the weight of the evidence rather than to its admissibility, and the responsibility lies in the first instance with the District Court to determine within its sound discretion whether the threshold of admissibility has been met." Williamson, 502 P.2d at 780.

Defendant's contention here that evidence of the phone conversation should have been excluded because it did not fall within Rule 901(b)(6), Mont.R.Evid., is erroneous because the conditions stated therein are examples only. In this case there are several confirming circumstances making it probable that defendant was in fact the speaker. There was no error in the denial of defendant's motion in limine.

The defendant alleges as error the District Court's failure to instruct on negligent homicide as a lesser included offense.

Section 46-11-501(2)(a), MCA, defines "included offense" as an offense which occurs when "it is established by proof of the same or less than all the facts required to establish the

- 11 -

commission of the offense charged . . ." While this definition is applicable to double jeopardy or former prosecution as a bar to a new prosecution, it also applies where we must determine whether an instruction on a supposed lesser included offense is required. In the instant case the defendant was charged with deliberate homicide. Section 45-5-102, MCA. The refused requested instruction dealt with negligent homicide. Section 45-5-104, MCA. The difference between the two crimes consists of the mental state necessary to convict a defendant of the respective crimes. For purposes of the following discussion we will assume that negligent homicide is a lesser included offense of deliberate homicide.

The question of the necessity of an instruction on a lesser included offense has been addressed in a number of recent cases by this Court. We have consistently held that such an instruction is required where there is some evidence to support the lesser offense. "[A] defendant is entitled to instructions on lesser included offenses if _any_ evidence exists in the record which would permit the jury to rationally find him guilty of a lesser offense and acquit him of a greater." State v. Ostwald (1979), ____Mont.____, 591 P.2d 646, 651, 36 St.Rep. 442, 448.

This test has been consistently applied by this Court. See State v. Baugh (1977), 174 Mont. 456, 571 P.2d 779, 34 St.Rep. 1315; State v. Bouslaugh (1978), ____Mont.____, 576 P.2d 261, 35 St.Rep. 319; State v. Radi (1978), ____Mont.____, 578 P.2d 1169, 35 St.Rep. 489; State v. Reiner (1978), ____Mont.____, 587 P.2d 950, 35 St.Rep. 1861.

In the _Reiner_ case, the defendant pointed a firearm at several people and was subsequently convicted of aggravated assault. The defendant had asked for an instruction on the lesser included offense of assault and had been refused. Under this set of facts the apprehension of serious bodily injury by the victims

was determinative. See section 45-5-202(c). This Court refused to overturn the conviction, saying:

> "There may be cases in which pointing a firearm or threatening another with a firearm could constitute assault rather than aggravated assault but we are not called upon here to say what those circumstances might be. In this case it is clear that the defendant put his victim in reasonable apprehension of serious bodily injury by his menacing use of a .357 magnum revolver." ___Mont.___, 587 P.2d at 958.

We are faced with a similar case. There is testimony in the record that death by manual strangulation requires two to three minutes, and longer if the victim struggles. In refusing the instruction, the District Court judge stated, "Well since the defense of negligent homicide is beyond my wildest imagination . . . I am going to refuse Defendant's . . ." instruction. Likewise, this Court cannot conceive how this death occurred as a result of negligence. We find no evidence in the record upon which an instruction of negligent homicide could be based. It was not error to refuse such an instruction.

Defendant contends the trial court erred in refusing defendant's offered instruction No. 34, which said:

> "You are instructed that if a person is assaulted in such a way as to induce in him a reasonable belief of danger of losing his life or suffering bodily harm, or that his family or a member thereof may suffer bodily harm, or another may suffer bodily harm, or his home is threatened, he will be justified in defending himself or another, though the danger be not real, only apparent."

The instruction that was given instead stated:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.
>
> "However, a person is justified in the use of force which is intended or likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself."

This is language taken from section 45-3-102, MCA.

Defendant argues that because of the expert testimony

regarding the intimidating effects on defendant caused by his bizarre relationship with his mother, it was essential that the jury be specifically instructed that his claim of self-defense be judged in terms of the apparent danger which he perceived and not the actual dangers which faced him. However, where counsel is "not limited under [the] instructions [given] from fairly presenting his defense to the jury, the defendant will not be heard to complain that the court failed to give the many different nuances on a theory of defense that might have been devised." State v. Collins (1978), ____Mont.____, 587 P.2d 1179, 35 St.Rep. 993, 1001.

The same issue was discussed in the Reiner case, supra. In that case we said:

> "In this instance the Court's instruction to the jury was drawn directly from the self-defense statute applicable. That statute states the jury must base its determination of the self-defense claim upon the defendant's reasonable belief of the need to use force to protect himself. While this instruction does not make the concept of apparent danger absolutely clear, neither does it misstate the law of self-defense. Under these circumstances the better practice may be to clearly instruct that the defendant's claim must be judged in terms of the apparent danger which he perceived, and not the actual danger which faced him. Yet the instruction given in this case cannot be considered so misleading as to require a new trial. We must assume that the jury did consider defendant's belief in the need to use force and whether that belief was reasonable. This is all the statute requires." 587 P.2d 1950, 35 St.Rep. at 1869.

The Reiner case controls. It was not reversible error to refuse the defendant's offered instruction No. 34.

Finally, the defendant contends that the giving of the following instruction to his jury constitutes reversible error.

> "The law presumes that a person intends the ordinary consequences of his voluntary acts."

Defense counsel made an objection to this instruction:

> " . . . Nowhere in the Montana Criminal Code is a statement that says that you can presume what that offered instruction says; that is in violation of

- 14 -

the requirement that the State must prove by competent evidence each and every material allegation and here there is a presumption that would not require the standard test beyond a reasonable doubt."

In a recent United States Supreme Court case it was held that an instruction which was given to the jury and which was identical to the above instruction, constituted reversible error. Sandstrom v. Montana (1979), 442 U.S. ____, 99 S.Ct. 2450, 61 L Ed 2d 39.

The Supreme Court came to this conclusion by analysing the instruction "the way in which a reasonable juror could have interpreted the instruction." They went on to say:

> "Given the common definition of 'presume' as 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways."

The first way the instruction may have been interpreted by the jury was as an irrebutable direction rather than a presumption. The second way was explained as follows:

> " . . . the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence--thus effectively shifting the burden of persuasion on the element of intent. Numerous federal and state courts have warned that instructions of the type given here can be interpreted in just these ways. (Citations omitted.) And although the Montana Supreme Court held to the contrary in this case, Montana's own Rules of Evidence expressly state that the presumption at issue here may be overcome only 'by a preponderance of evidence contrary to the presumption.' Montana Rules of Evidence 301(b)(2). Such a requirement shifts not only the burden of production, but also the ultimate burden of persuasion on the issue of intent.

> "We do not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or

persuasion-shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid." 442 U.S. at ____, 99 S.Ct. at____, 61 L Ed 2d at 47-48.

A state must prove beyond a reasonable doubt every element of the crime charged. In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L Ed 2d 368. In Sandstrom the State had to prove that the crime was committed purposely or knowingly. Section 45-5-102, MCA. The United States Supreme Court concluded that under either interpretation the instruction relieved the state of proving intent beyond a reasonable doubt, therefore, it violated defendant's guarantee of due process. If the instruction was interpreted as a conclusive presumption it would excuse the state from proving a vital element and would be unconstitutional under Winship, supra. If Sandstrom's jury had interpreted the presumption as merely shifting the burden of persuasion, "it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to defendant to prove he lacked the requisite mental state. Such a presumption was found constitutionally deficient in Mullaney v. Wilbur, 421 U.S. 684 (1975)." The Supreme Court concluded that "the judgment of the Supreme Court of Montana is reversed and remanded for further proceedings not inconsistent with this opinion." 442 U.S. at ____, 99 S.Ct. at____, 61 L Ed 2d at 53.

This Court subsequently remanded the case to the District Court for a retrial. State v. Sandstrom (1979), ____Mont.____, ____P.2d____, 36 St.Rep. 2099.

The State contends that the instruction was harmless error under the facts of this case. We agree.

The present case began with a phone call to the Carbon County sheriff's office. An officer heard what sounded like a struggle between a male and female. There was scuffling and a

female voice calling for help. After hearing what sounded like the female gasping for air and choking, the officer began to write down the intelligible words and sentences he could make out. He recorded the following phrases spoken at intervals by the male voice:

> "Goddamnit, die. I am going to hell. Mamma, I am sorry. You all right, Mamma, huh? No, no, no, Mamma. I love you. Mamma, Mamma, Mamma, Like hell I am. I have never done this in my life. Now I have got to find my glasses. Mamma, Mamma. Die, you bitch. Goddamnit, die. Are you going to die or not? Die, damnit. I am going to hell, Mamma."

Minutes later, law enforcement officers arrived at the defendant's home and found him with bruises and scratches on his face. His 75 year old mother was lying face down on the floor. She had been manually strangled to death.

These facts were testified to at trial.

In order for a federal constitutional error to be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L Ed 2d 705. The Chapman decision was based upon the earlier decision of Fahy v. Connecticut (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L Ed 2d 171. The court had said in Fahy: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. at 86-87.

In Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L Ed 2d 284, the Supreme Court again considered the concept of harmless error. The prosecution, during defendant's trial, had introduced the confessions of three codefendants. Two of the codefendants did not take the stand. This practice had been held to be a denial of Sixth Amendment rights in Bruton v. United States (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L Ed 2d 476. In Harrington, however, the Court held that the practice could,

under the facts of the case, be held as harmless error. The

Court said:

> "But apart from them [the confessions] the case against Harrington was so overwhelming that we conclude that this violation of Bruton was harmless beyond a reasonable doubt, unless we adopt the minority view in Chapman (386 U.S. at 42-45) that a departure from constitutional procedures should result in an automatic reversal, regardless of the weight of the evidence.

> "It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of Cooper's and Bosby's confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. We admonished in Chapman, 386 U.S., at 23, against giving too much emphasis to 'overhelming evidence' of guilt, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. By that test we cannot impute reversible weight to the two confessions.

> "We do not depart from Chapman; nor do we dilute it by inference. We reaffirm it. We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of Bruton can constitute harmless error, we must leave this state conviction undisturbed." 395 U.S. at 254. (Emphasis added.)

In Milton v. Wainwright (1972), 407 U.S. 371, 92 S.Ct.

2174, 33 L Ed 2d 1, the Supreme Court again considered the harm-

less error doctrine. The Court said that there was overwhelming

evidence of guilt and that there was "no reasonable doubt that

the jury . . . would have reached the same verdict without hear-

ing [the tainted] testimony." 407 U.S. at 377. Consequently,

defendant's conviction was affirmed.

The tests used in Harrington and Milton seemingly are

different. The Harrington test focuses on the impact upon the

jury. The Milton test focuses upon the amount of evidence

- 18 -

presented at the trial or the "overwhelming evidence" test.  See

Boy, Harmless Error:  The Need For a Uniform Standard, 53 St.

John's L.R. 541 (1979).

Recently, this Court has made the following observation:

"To constitute harmless error, we must be able to assent as a

Court that the offensive instruction could not reasonably have

contributed to the jury verdict."  State v. Sandstrom (1979),

_____Mont._____, at_____, 603 P.2d 244, at 245, 36 St.Rep. 2099, 2100.

This statement indicates that the law in Montana as to harmless

error is closer to the Harrington test.  That is, the appellate

court determines the impact of the error upon a reasonable jury.

If the impact of the instruction could not have reasonably con-

tributed to the verdict, then the error is harmless.  That such

an approach is correct is emphasized by the United States Supreme

Court.  They said that the proper analysis of an instruction

begins with "the way in which a reasonable juror could have inter-

preted the instruction."  442 U.S. at _____, 99 S.Ct. at _____,

61 L Ed 2d at 45.

Under Montana law, causing the death of another becomes

deliberate homicide only when it is committed purposely or know-

ingly.  Section 45-5-102, MCA.  Therefore, these elements are

necessary to the proof of this particular crime, and must be proved

beyond a reasonable doubt by the prosecution.

For obvious reasons, intent is a difficult element to

prove.  The evidence must normally be in the nature of outward

manifestations of the defendant's state of mind.  In the present

case, however, we have a unique situation.  We know what the de-

fendant was thinking.  A police officer heard him say, among other

things:

> "Goddamnit, die . . . Die you bitch.  Goddamnit,
> die.  Are you going to die or not?  Die, damnit . . ."

It is difficult to conceive of a better indication as to

defendant's intent.  Also, the officer heard the fight at the time these words were spoken and another officer found the defendant and the victim's body minutes later.

For purposes of this issue, the only contested element is intent.  The evidence as to intent is overwhelming.  We have carefully read the record and our holding is based upon the probable impact of the instruction upon the minds of the average jury.  In the light of the evidence, the impact of the instruction upon the jury could not have reasonably contributed to the verdict.  The error was harmless.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices